JKB/cic/557571                                                                    9023-1-51

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KOLCRAFT ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 CV03339 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| CHICCO USA, INC., | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF THE TERMS
## OF U.S. PATENT NO. 7,376,993 THAT REQUIRE CONSTRUCTION

## TABLE OF CONTENTS

I.      INTRODUCTION...........................................................................................1

II.     THE '993 PATENT.......................................................................................3

III.    LAW OF CLAIM CONSTRUCTION ........................................................4

        A.      Identifying The Person Of Ordinary Skill In The Art   ....................................4

        B.      The Starting Point In Claim Construction Is The Claims .................................5

        C.      Next The Court Considers Intrinsic Evidence Including Other Claims,
                The Specification, And The Prosecution History.............................................5

        D.      The Use Of Extrinsic Evidence, If Necessary .................................................6

        E.      Claim Construction Cannot Rewrite A Claim To Preserve Its Validity ..........7

IV.     THE PERSON OF ORDINARY SKILL IN THE ART................................8

V.      PROPOSED CONSTRUCTION OF THE DISPUTED CLAIM TERMS
        OF THE '993 PATENT ................................................................................8

        A.      Claim 28:  The Steps Of Method Claim 28 Must Be Performed
                In A Particular Order......................................................................................9

        B.      Claim 28: "securing a play gym at least partially above at least one
                of a bassinet and a play yard …"...................................................................10

        C.      Claim 28: "securing the play gym to a mat apart from the play gym
                and the bassinet ..."........................................................................................13

                1.      This Phrase is Unintelligible and Renders Claim 28 Invalid ..............13

                2.      The Error in Claim 28 Cannot be Fixed in Litigation.........................14

                3.      To The Extent This Phrase of Claim 28 Can Be Construed, It
                        Must Be Construed Using The Patentees' Language, And Not
                        The Language That Kolcraft Wishes The Patentee Had Chosen........17

        D.      Claim 28: "pivoting the leg into a stored position.".......................................18

        E.      Claim 30:  "moving the leg of the play gym toward the hub to secure

the leg in the stored position…" .........................................................................21

VI.    CONCLUSION ...................................................................................................23

# **TABLE OF AUTHORITIES**

## **Cases**

*Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336 (Fed. Cir. 2002).....................................7

*Amazon.com, Inc. v. Barnesandnobel.com, Inc.*, 239 F.3d 1343 (Fed. Cir. 2001) .........................7

*Arlington Industries, Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318 (Fed. Cir. 2003) ..............16

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443 (Fed. Cir. 1986)...............7

*Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792 (Fed. Cir. 1990) ...................................7

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945 (Fed. Cir. 2006) .......................................................13

*Brown v. 3M*, 265 F.3d 1349 (Fed. Cir. 2001)................................................................................5

*C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858 (Fed. Cir. 2004).........................................6

*Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004) ................................7, 8, 13

*Combined Systems, Inc. v. Defense Corp of America*, 350 F.3d 1207 (Fed. Cir. 2003).................9

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302 (Fed. Cir. 2000) ......7, 13, 14

*Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002).........................................11

*Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776 (Fed. Cir. 2010) ........................13

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379 (Fed. Cir. 2008) .........................7

*Hoffer v. Microsoft Corp.*, 405 F.3d 1326 (Fed. Cir. 2005).........................................................16

*Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948 (Fed. Cir. 1993) ................................................14

*ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368 (Fed. Cir. 2009) ...........................................11

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004)...................................................................................4, 5

*K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356 (Fed. Cir. 1999) ..........................................................7

*Katz v. AT&T Corp.*, 63 F. Supp. 2d 583 (E.D. Pa. 1999).............................................................6

*Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202 (Fed. Cir. 1992) ......................................................15

*Life Techs, Inc. v. Clontech Labs, Inc.*, 224 F.3d 1320 (Fed. Cir. 2000).........................................5

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc),
    *aff'd*, 517 U.S. 370 (1996) ..................................................................................................4, 6

*Markman v. Westview Instruments*, 517 U.S. 370 (1996) ................................................................4

*Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367 (Fed. Cir. 2003) ....................................6

*Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473 (Fed. Cir. 1998)...............................5

*Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed. Cir. 2003)....................................15

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..................................................... *passim*

*Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350 (Fed. Cir. 1999) ...................7, 8, 14

*Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577 (Fed. Cir. 1995) .....................................................7

*Reiffin v. Microsoft Corp.*, 214 F.3d 1342 (Fed. Cir. 2000) ..........................................................11

*Rembrandt Data Techs, LP v. AOL, LLC*, 641 F.3d 1331 (Fed. Cir. 2011) ...................................16

*Rhine v. Casio, Inc.*, 183 F.3d 1342 (Fed. Cir. 1999) .......................................................................7

*Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448 (Fed. Cir. 1985).........................................5

*Sterner Lighting, Inc. v. Allied Electrical Supply, Inc.*, 431 F.2d 539 (5th Cir. 1970)...................7

*Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165 (Fed. Cir. 1993)......................7

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339 (Fed. Cir. 2009) .....14, 16

*Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004) .....................................11

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997)............................................4

*Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991) ........................................................11

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996).......................................5, 6

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795 (Fed. Cir. 1999)..................................4

*White v. Dunbar*, 119 U.S. 47 (1886) ...............................................................................................7

*Wilson Sporting Goods, Co. v. Hellerich & Bradsby Co.,* 442 F.3d 1322 (Fed. Cir. 2006)..........21

**<u>Statutes</u>**

35 U.S.C. § 112...............................................................................................11, 13

35 U.S.C. § 254 ..............................................................................................15, 16

35 U.S.C. § 255...............................................................................................15

I.     **INTRODUCTION**

Plaintiff, Kolcraft Enterprises, Inc. ("Kolcraft"), brought this action for infringement of its U.S. Patent No. 7,376,993 ("'993 Patent") against Defendant, Chicco USA, Inc., now known as Artsana USA, Inc. ("Artsana").

The '993 Patent is titled "Play Gyms and Methods Of Operating The Same."  The '993 Patent issued on May 27, 2008 with 31 claims, consisting of product claims 1-27 and method claims 28-31.  Joint Appendix at JA-000001-12.  Kolcraft's June 3, 2009 Complaint for patent infringement alleged that Artsana's Lullaby LX Playard ("accused playard") infringed claims 1-12 and 18-21 of the '993 Patent, as those claims existed at the time of the Complaint.  Dkt. No. 1, at ¶ 9.  After receiving Kolcraft's Complaint, Artsana filed a Request for Reexamination of the '993 Patent with the U.S. Patent and Trademark Office ("USPTO") that raised a substantial new question of patentability of those originally issued claims.  The USPTO Ordered the reexamination of the '993 Patent and rejected the originally issued claims 1-27.  That USPTO reexamination proceeding remains pending and the currently pending claims 1-27 were amended in response to the USPTO's rejections of them.  Because original claims 1-12 and 18-21 no longer exist as a result of Kolcraft's amendments, Kolcraft's April 3, 2012 initial infringement contentions added the allegation that Artsana infringes method claims 28-31 of the '993 Patent.

The Court's May 31, 2012 Order limited the current action to litigation of only method claims 28-31 of the '993 Patent.  Dkt. No. 142.  Therefore, the parties' claim construction briefs must be limited to the subject matter of the originally issues method claims, 28-31, of the '993 Patent.

In accordance with the Court's Scheduling Order, the parties identified and exchanged disputed claim terms on October 9, 2012 along with proposed claim constructions. Artsana identified the following five (5) claim phrases for construction:

1. Claim 28: "securing a play gym at least partially above at least one of a bassinet and a play yard …"

2. Claim 28: "securing the play gym to a mat apart from the play gym and the bassinet ..."

3. Claim 28: "pivoting the leg into a stored position."

4. Claim 28: A construction that the steps of method claim 28 must be performed in the order presented.

5. Claim 30: "moving the leg of the play gym toward the hub to secure the leg in the stored position…"

Kolcraft did not identify any term for construction, but identified claim 28's phrase, "securing the play gym to a mat apart from the play gym and the bassinet," as requiring correction.

Claim construction is a straightforward exercise similar to the Court interpreting disputed contract terms. The process of patent claim construction is not intended to be an avenue to re-write the patent claims to correct the claim language or to fit the patent owner's infringement allegation. The language of the claims was carefully crafted during the bargaining process with the USPTO in order to gain allowance of the '993 Patent and cannot be modified or changed to suit Kolcraft's infringement allegations in this litigation.

The controlling law defining the canons of claim construction is set forth in Section III below. As set forth in Section V below, Artsana's proposed construction of the disputed terms of the '993 Patent is based on the intrinsic record, which includes the claim language, specification, and prosecution history, in accordance with the law on claim construction.

## II.   THE '993 PATENT

The application that issued as the '993 Patent was filed on December 1, 2003 as a continuation of the abandoned parent patent application, U.S. Patent Appln. No. 10/431,079, filed on May 7, 2003.  Claim 28 and Figures 1 and 2 of the '993 Patent are reproduced below:

28. A method comprising:

removing the play gym from the at least one of the bassinet and the play yard;

securing the play gym to a mat apart from the play gym and the bassinet;

removing the play gym from the mat; and collapsing the play gym, wherein collapsing the play gym comprises:

pulling a leg of the play gym in a direction away from a hub; and,

pivoting the leg into a stored position.



As described in the '993 Patent specification, the play gym (10), having four legs (22) attached to a hub (20), can be used with a bassinet (12) or a play yard (14) in one mode and, in another mode, can be used with a floor mat (16).

- 3 -

### III.    LAW OF CLAIM CONSTRUCTION

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).    Every patent analysis must begin with a determination of "the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).   Claim construction is a matter of law decided exclusively by the court and not the finder of fact.  *Markman v. Westview Instruments,* 517 U.S. 370, 372 (1996).   Construing the claims is a multi-step process including the following steps:

    (1)    consideration of the plain and ordinary meaning of the claim terms;

    (2)    consideration of other claims, the specification, and the patent's prosecution history (*i.e.*, intrinsic evidence); and

    (3)    use of extrinsic evidence to interpret the claims terms, if necessary.

*See Phillips*, 415 F.3d at 1312-19; *Markman*, 52 F.3d at 980.

Although the claims are construed objectively, only those terms in controversy need be construed and only to the extent necessary to resolve the controversy.  *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997).

### A.    Identifying The Person Of Ordinary Skill In The Art

Claim construction requires that a court identify the person of ordinary skill in the art because it is from this perspective that claims are construed.  A person of ordinary skill in the art is one who thinks along the line of conventional wisdom in the art and is not one who undertakes to innovate, whether by patient, and often expensive, systematic research or by extraordinary

insights. *Life Techs, Inc. v. Clontech Labs, Inc.*, 224 F.3d 1320, 1325 (Fed. Cir. 2000) (citing *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985)).

**B.      The Starting Point In Claim Construction Is The Claims**

The starting point for any claim analysis is to consider the "plain and ordinary" meaning of the disputed claim terms. *Phillips*, 415 F.3d at 1312 (citing *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). The ordinary and customary meaning of a claim term is the meaning it would have to a person of ordinary skill in the art after reading the entire specification on its effective filing date. *Phillips*, 415 F.3d at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)).

**C.      Next The Court Considers Intrinsic Evidence Including Other Claims,
The Specification, And The Prosecution History**

After considering the plain meaning of a claim term, courts "[look] to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116). These sources include "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence . . . .'" *Id.* (quoting *Innova*, 381 F.3d at 1116). "Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term." *Id.* (citing *Vitronics*, 90 F.3d at 1582).

The claims are also read in view of the specification. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). The specification describes the process of making and using the invention, and "[t]hus claims must be construed so as to be consistent with the specification, of which they are a part." *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003).

Next, the Court should consider the patent's prosecution history, which includes the record of proceedings before the USPTO that lead to the issuance of the '993 Patent. *Phillips*, 415 F.3d at 1317. The prosecution history provides evidence of how the inventor and the USPTO understood the patent and should be consulted to determine whether the inventor limited the invention during prosecution. *Id.*. A court may also "consider the prior art cited in the prosecution history, which may contain clues as to what the claims do not cover." *Katz v. AT&T Corp.*, 63 F. Supp. 2d 583, 591 (E.D. Pa. 1999).

    **D.**    **The Use Of Extrinsic Evidence**

The Court may consider extrinsic evidence. Extrinsic evidence consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises. *See Markman*, 52 F.3d at 980. The use of extrinsic evidence should be limited to edification purposes, as it is "less significant than the intrinsic record in determining the 'legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Courts may consult dictionaries for assistance in determining the meaning of claims so long as the dictionary definition "does not contradict any definition found in or ascertained by a reading of the patent documents." *Id.* at 1322-23 (citing *Vitronics*, 90 F.3d 1576 at 1584 n.6).

The Artsana references dictionary definitions, Exhibits A and B are provided to show the commonly understood meaning of the term, which is consistent with its use in the '993 Patent.

**E.  Claim Construction Cannot Rewrite A Claim To Preserve Its Validity**

It is well settled that "[c]ourts cannot rewrite claim language." *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) (citing *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee."); *Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) ("[C]ourts can neither broaden nor narrow claims to give the patentee something different than what he has set forth.") (internal quotes omitted)).   "A patent may not, like a 'nose of wax' be twisted one way to avoid anticipation and another to find infringement." *Sterner Lighting, Inc. v. Allied Electrical Supply, Inc.*, 431 F.2d 539, 544 (5th Cir. 1970) (quoting *White v. Dunbar*, 119 U.S. 47, 51 (1886).  The failure to properly interpret the claims may distort the infringement and validity analyses.  *See Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 450 (Fed. Cir. 1986); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

Courts have routinely refused to "redraft" patent claims -- no matter how great the temptation to preserve validity or make the claims operable.  *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (citing *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002); *Elekta Instrument S.A.*, 214 F.3d 1302, 1308-1309 (Fed, Cir. 2000); *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999); *Rhine v. Casio, Inc.*, 183 F.3d 1342 1345 (Fed. Cir. 1999); *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995); *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 799 n.6 (Fed. Cir. 1990)).  Even a nonsensical result does not require the court to redraft patent claims.

Rather, when claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical or inoperative construction of the claim as a whole, the claim must be invalidated. *Chef Am., Inc.*, 358 F.3d at 1374; *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999) ("Where, as here, the claim is susceptible to only one reasonable construction, the canons of claim construction cited [ ] are inapposite, and we must construe the claims based on the patentee's version of the claim as he himself drafted it.").

As set forth in Section V below, Kolcraft's request to have this Court correct the unintelligible phrase, "securing the play gym to a mat apart from the play gym and the bassinet," in claim 28 is contrary to the clear law on this point, and this Court should not redraft any claim of the '993 Patent to preserve its validity or make it operable.

## IV.  THE PERSON OF ORDINARY SKILL IN THE ART

Artsana submits that a person of ordinary skill in the art related to the '993 Patent is someone with two (2) year's of formal education in the mechanical arts or two (2) years of industry experience in the baby gear field. It is from the perspective of this person that all of the asserted claims of the '993 Patent are to be interpreted.

## V.  PROPOSED CONSTRUCTION OF THE DISPUTED CLAIM TERMS OF THE '993 PATENT

Artsana submits that the following underlined phrases of claims 28 and 30 of the '993 Patent require construction.

28. A method comprising:

**securing a play gym at least partially above at least one of a bassinet and a play yard;**

removing the play gym from the at least one of the bassinet and the play yard;

**securing the play gym to a mat apart from the play gym and the bassinet;**

removing the play gym from the mat; and

collapsing the play gym, wherein collapsing the play gym comprises:

pulling a leg of the play gym in a direction away from a hub; and

**pivoting the leg into a stored position**.

30. A method as defined in claim 28 further comprising **moving the leg of the play gym toward the hub to secure the leg in the stored position**.

## A.     Claim 28:     The Steps Of Method Claim 28 Must Be Performed In A Particular Order

In setting forth the following analysis, Artsana does not concede that the method claims of the '993 Patent ever identify what result is to be accomplished by performing the recited method. Method claim 28 of the '993 Patent recites a series of steps, including: (1) "securing a play gym …;" (2) removing the play gym …;" (3) "securing the play gym …;" (4) "removing the play gym …" and (5) "collapsing the play gym" that must be construed to be performed in a particular order, without regard to what the method might be intended to achieve.

The steps of a method claim are construed to require sequential order when (1) the steps of the method actually recite an order; or (2) the method steps implicitly require that they be performed in the order written.  In *Combined Systems, Inc. v. Defense Corp of America*, the Federal Circuit held that an implied sequential order was required for the method claim at issue. 350 F.3d 1207, 1212 (Fed. Cir. 2003).  The claim at issue included the steps of "*forming folds* in said tubular sock-like projectile body immediately forward of said rear opening thereof," and then "inserting *said formed folds*."  *Id*. at 1208 (emphasis added).  The court concluded that a plain reading of the language foreclosed the idea of forming the "folds" following the "inserting" step.  *Id*. at 1212.  "Compelling evidence to the contrary" would require a reading of the language without regard to its grammar.  *Id*.

With respect to the present claim 28 of the '993 Patent, the claim language requires an express order of the recited steps. In order to perform the second step of claim 28, "removing the play gym from the at least one of the bassinet and the play yard," it is logical that the play gym must first be secured "at least partially above at least one of a bassinet and a play yard" as recited in the first step of claim 28. Similarly, in order to perform the third step of claim 28, "securing the play gym to a mat apart from the play gym and the bassinet," the play gym must first be removed from the at least one of the bassinet and the play yard" as recited in the third step of claim 28. Finally, in order to perform the fourth step of claim 28, "removing the play gym from the mat," the play gym must be secured to the mat as recited in the third step of claim 28.

The proper construction of claim 28 requires that all of the steps be performed in the particularly recited sequential order.

**B.      Claim 28: "securing a play gym at least partially above at least one of a bassinet and a play yard …"**

Claim 28 of the '993 Patent omits an essential element of the invention that renders it broader than the alleged invention described in the specification. As discussed above, claim 28 of the '993 Patent recites a method having multiple steps that involve "securing" and "removing" a play gym.

As written, claim 28 omits any structure or element for the recited step of "securing a play gym at least partially above at least one of a bassinet and a play yard." In other words, how is the play gym secured and to what? As written, this limitation is overly broad. Does it encompass a play gym that hangs from a ceiling so that it is "partially above" a bassinet or play yard? Does it could encompass an embodiment where a play gym is cantilevered from another fixture so it is "partially above" a bassinet or play yard? The '993 Patent's specification and drawings do not support such a broad claim.

- 10 -

In *ICU Med., Inc. v. Alaris Med. Sys.*, the Federal Circuit explained the importance of the written description requirement in interpreting patent claims, stating:

> "[T]he purpose of the written description requirement is to 'ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification.'" *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 920 (Fed. Cir. 2004) (quoting *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000)). This requirement protects the quid pro quo between inventors and the public, whereby the public receives "meaningful disclosure in exchange for being excluded from practicing the invention for a limited period of time." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 970 (Fed. Cir. 2002). To satisfy the written description requirement, a patent applicant must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention. The invention is, for purposes of the 'written description' inquiry, whatever is now claimed." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

558 F.3d 1368, 1376-1377 (Fed. Cir. 2009) (emphasis added).

In *ICU*, the patent covered technology for using syringes to add drugs to an IV. Each embodiment described in the specification included a "spike." The asserted claim at issue omitted a "spike" and the defendant challenged the validity of the asserted spikeless claims because they lacked the required written description in the specification pursuant to 35 U.S.C. § 112, ¶ 1. *Id.* at 1377. The Federal Circuit held that the "spike" limitation was essential to every embodiment described in the specification, and because that the "spikeless" claims were broader than the invention described in specification, the claims were invalid under 35 U.S.C. § 112, first paragraph, for lack of support in the written description. *Id.* at 1378-79.

The '993 Patent specification uniformly describes that the play gym must be "secured" to the play yard, bassinet, or mat when it is "partially above at least one of the bassinet and play yard." In particular, the '993 Patent specification and Figures 1 and 6 describe and illustrate the play gym secured with connectors to the bassinet or play yard, as follows:

- 11 -

To removably couple the play gym 10 to at least one of the bassinet 12 and the play yard 14, at least one of the mat 16, the bassinet 12 and the play yard 14 is provided with connectors 50. Persons of ordinary skill in the art will readily appreciate that the connectors 50 may be implemented in any number of ways. In the illustrated example, the connectors 50 are implemented by fabric pockets 50 which are sewn or otherwise fastened adjacent the corners of the bassinet 12 and/or the play yard 14 (see FIG. 6). The ends of the legs 22 opposite the hub 20 are positioned in respective ones of these pockets 50 to thereby couple the play gym 10 to the bassinet 12 and/or the play yard 14. …

JA-000010 (col. 5, ll. 4-15).



JA-000003; JA-000006.

The '993 Patent admits that it was <u>well know in the art</u> to have:

(1)     a play yard (JA-000008 (col. 1, ll. 18-21; col. 2, ll. 49-52));

(2)     a bassinet for use with a play yard (JA-000008 (col. 1, ll. 29-34; col. 2, ll. 58-65));

and,

(3)     a play gym used with a floor mat (JA-000008 (col. 1, ll.52-62)).

- 12 -

Because all of these items are admittedly well known in the art, the interchangeable <u>connection,</u> between and among the play gym and the play yard, the play gym and the bassinet, and the play gym and the mat, is essential to the alleged "invention" of claim 28.

Considering the entirety of the '993 Patent, it is clear that it is essential to the "securing" step of claim 28 that the play gym is <u>connected</u> to a specified structure. Because claim 28 omits an essential element for "securing" the play gym, it is broader than the invention described in the '993 Patent and the '993 Patent lacks the required written description pursuant to 35 U.S.C. § 112, first paragraph.

C.  **Claim 28: "securing the play gym to a mat apart from the play gym and the <u>bassinet ...</u>"**

1.  <u>**This Phrase is Unintelligible and Renders Claim 28 Invalid**</u>

The claim 28 phrase, "securing the play gym to a mat apart from the play gym and the bassinet," is indefinite pursuant to 35 U.S.C. § 112, second paragraph, lacks support in the written description to render it enabling pursuant to 35 U.S.C. § 112, first paragraph, and is not amenable to construction. This phrase is unintelligible as it requires the step of "securing <u>the play gym</u> to a mat <u>apart from the play gym</u> and the bassinet." (emphasis added). If the play gym is secured to a mat, then by definition, the mat cannot be "apart" from the play gym.

In *Haemonetics Corp. v. Baxter Healthcare Corp.*, the Federal Circuit held that an unintelligble claim limitation should not be redrafted to avoid a "nonsensical" result, stating:

> … Patent claims function to delineate the precise scope of a claimed invention and to give notice to the public, including potential competitors, of the patentee's right to exclude. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006). This notice function would be undermined, however, if courts construed claims so as to render physical structures and characteristics specifically described in those claims superfluous. Id.; *see also Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) … . As such, we construe claims with an eye toward giving effect to all of their terms, *Bicon*, 441 F.3d at 950, even if it renders the claims inoperable or invalid, *see Chef Am., Inc.*

- 13 -

*v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[W]here, as here, claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated." (quoting *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999))); *Elekta Instrument*, 214 F.3d at 1309 (same).

…

… [W]e do not redraft claims to contradict their plain language in order to avoid a nonsensical result. *See, e.g., Elekta Instrument*, 214 F.3d at 1309. *Cf. Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1348 (Fed. Cir. 2009) … .

… An "error" may have occurred in drafting claim 16, as Haemonetics's counsel indicated during the district court's claim construction hearing, J.A. 923, but it is what the patentee claimed and what the public is entitled to rely on. *See Process Control*, 190 F.3d at 1357 ("Where, as here, the claim is susceptible to only one reasonable construction, . . . we must construe the claims based on the patentee's version of the claim as he himself drafted it."); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed. Cir. 1993) ("It would not be appropriate for us now to interpret the claim differently just to cure a drafting error … . That would unduly interfere with the function of claims in putting competitors on notice of the scope of the claimed invention.").

607 F.3d 776, 781-83 (Fed. Cir. 2010) (emphasis added).

Because the claim 28 phrase, "securing the play gym to a mat apart from the play gym and the bassinet," on its face requires that the play gym to be "secured" to a mat, and that the mat also be "apart" from the play gym, this phrase is unintelligble and not amenable to construction.

## 2.    The Error in Claim 28 Cannot be Fixed in Litigation

Kolcraft's October 9, 2012 Preliminary Identification of Claim Terms To Be Construed and Proposed Constructions states:

| Claim Term | Plaintiff's proposed construction |
|---|---|
| "securing the play gym to a mat apart from the play gym and the bassinet" | This limitation contains a typographical error and should be corrected by the Court to read: "securing the play gym to a mat apart from the play yard and the bassinet" |

Kolcraft admits that issued claim 28 is unintelligible and is requesting that this Court rewrite claim 28 some 4½ years after it issued. Kolcraft had ample time to request correction by the

USPTO under the applicable statutory provisions regarding correction of patents, and its belated request for this Court to correct claim 28 more than 3½ years into this litigation is improper.

In *Novo Indus., L.P. v. Micro Molds Corp.*, the Federal Circuit stated that "[a]lthough we conclude that Congress intended to preserve the authority of the district courts to correct errors, we do not think that Congress intended that the district courts have the authority to correct any and all errors that the PTO would be authorized to correct under sections 254 and 255." 350 F.3d 1348, 1356 (Fed. Cir. 2003). 35 U.S.C. §§ 254 and 255 of the Patent Act address corrections of patents due to mistakes by the USPTO (§ 254) and the patentee (§ 255).[1] In *Novo*, the Federal Circuit discussed the role of judicial correction of patents in view of §§ 254 and 255:

> After the enactment of sections 254 and 255, we have assumed that courts can continue to correct obvious minor typographical and clerical errors in patents. *See Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202, 1203 & n.3 (Fed. Cir. 1992) (adding the word "toy" to the preamble of a claim because "the deletion of 'toy' appears from the record of the proceedings before the PTO to have been an inadvertent error when the patent was printed rather than an amendment to the claim"). At the

---

[1] § 254. Certificate of correction of Patent and Trademark Office mistake
Whenever a mistake in a patent, incurred through the fault of the Patent and Trademark Office, is clearly disclosed by the records of the Office, the Director may issue a certificate of correction stating the fact and nature of such mistake, under seal, without charge, to be recorded in the records of patents. A printed copy thereof shall be attached to each printed copy of the patent, and such certificate shall be considered as part of the original patent. Every such patent, together with such certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form. The Director may issue a corrected patent without charge in lieu of and with like effect as a certificate of correction.

§ 255. Certificate of correction of applicant's mistake
Whenever a mistake of a clerical or typographical nature, or of minor character, which was not the fault of the Patent and Trademark Office, appears in a patent and a showing has been made that such mistake occurred in good faith, the Director may, upon payment of the required fee, issue a certificate of correction, if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination. Such patent, together with the certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form.

same time, we have assumed that major errors are subject only to correction by
the PTO.

350 F.3d at 1357.

The Federal Circuit permits judicial correction of a patent claim for obvious claim errors,
such as where a claim depended from a claim that did not exist due to a USPTO error when
renumbering the claims for printing (*see Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed.
Cir. 2005)), or to add a comma to a claimed formula where the claimed formula without the
comma corresponded to no known mineral and one of ordinary skill in the art would know that
the formula should contain a comma (*see Ultimax Cement Mfg. v. CTS Cement Mfg.*, 587 F.3d
1339, 1353 (Fed. Cir. 2009)).

However, the Federal Circuit has held that judicial correction is not appropriate to redraft
a claim to make it valid.  For example, in *Rembrandt Data Techs, LP v. AOL, LLC*, the Federal
Circuit denied the insertion of the phrase "transmitter section for" into a claim in order to add an
apparatus and make the claim at issue valid holding that this correction amounted to a substantial
redraft of the claim at issue. 641 F.3d 1331, 1339-40 (Fed. Cir. 2011). The Federal Circuit stated
that the suggested correction was not minor, obvious, free from reasonable debate or evident
from the prosecution history.  *Id.*  Similarly, in *Arlington Industries, Inc. v. Bridgeport Fittings,
Inc.*, the Federal Circuit denied changing the term "base and" to "base end" in a claim where the
patentee argued the term "and" after base was a typographical error by the PTO. 345 F.3d 1318,
1331 (Fed. Cir. 2003).  The Federal Circuit reasoned that the proper method of addressing the
error would be to obtain a certificate of correction under 35 U.S.C. § 254.  *Id.*

In the present matter, claim 28 of the '993 Patent was based on original claims 36 in
Kolcraft's patent application filed with the USPTO.  In particular, original claim 36 stated:

     36. A method comprising:

> securing a play gym at least partially above at least one of a bassinet and a play yard;
>
> removing the play gym from the at least one of the bassinet and the play yard; and
>
> <u>securing the play gym to a mat apart from the play gym and the bassinet</u>.

JA000344-000345 (emphasis added). While claim 36 was amended to incorporate the language or original claims 38 and 39 of Kolcraft's patent application, no amendments were made to the phrase "securing the play gym to a mat apart from the play gym and the bassinet" from the time the application was filed to today. Because claim 28 of the '993 Patent represents the original claim language chosen by the patentee to describe the scope of the alleged invention, this is not an "obvious error" that should be corrected by this Court.

The '993 Patent issued in May 2008 and there is no reasonable basis for Kolcraft's failure to request correction by the USPTO. There is also a pending USPTO reexamination proceeding in which Kolcraft could have requested correction of this claim.

Because Kolcraft clearly knew of this error in claim 28 and proceeded with this infringement litigation on the basis of this erroneous claim, it should not be rewarded with judicial correction of this claim 3½ years into this litigation.

### 3. To The Extent This Phrase of Claim 28 Can Be Construed, It Must Be Construed Using The Patentees' Language, And Not The Language <u>That Kolcraft Wishes The Patentee Had Chosen</u>

To the extent that the phrase "securing the play gym to a mat apart from the play gym and the bassinet," is construed to be valid, the term "apart" must be construed to require that the mat be a mat separate from that used in the bassinet or the play yard. Thus, the play gym cannot be secured to the same mat that it is secured to in the bassinet.

- 17 -

### D. Claim 28: "pivoting the leg into a stored position."

The claim 28 phrase, "pivoting the leg into a stored position" must be construed to require that the leg be connected to a fixed member, such as a shaft or pin, and turned or rotated about the fixed member to a stored position.

It is universally understood that the term "pivot" refers to "a shaft or pin on which something turns." Merriam-Webster Online, Merriam Webster, Incorporated (©2012) (http://www.merriam-webster.com/dictionary/pivoting) (a website printout is attached as Exhibit "A") and The American Heritage Dictionary (© 1982. 1985, page 946) (a copy of this paper dictionary page is attached as Exhibit "B"). There is nothing in the specification of the '993 Patent that supports any meaning other than this universal understanding. Thus, the claimed action of "pivoting" requires turning or rotating the pivoted object about a shaft or pin. The '993 Patent drawings also illustrate this universal understanding of the "pivoting" action of the play gym legs in accordance with the well accepted meaning of the term "pivoting."

Figures 3 and 4, reproduced below, illustrate the claimed action of "pivoting the leg into a stored position."



*Fig. 3*

*Fig. 4*

JA-000005. Figures 7-9, reproduced below with highlighting, are cross sections that illustrate in detail the claimed pivoting action and the inventor's way of relating legs (22), pivot (32), and hub (20) to each other:



JA-000007.

As shown in the '993 Patent's drawings, the legs (22) are connected to the hub (20) via pin (32). The legs are rotatable about pin (22) in order to move from the use position to the stored position. This is also supported by the '993 Patent specification, which states:

> In the illustrated example, the legs 22 are pivotably coupled to the hub 20 such that they can be pivoted between a stored position wherein the legs 22 are positioned generally parallel to each other as shown in FIG. 4, and an extended position wherein the legs 22 extend generally radially outward from the hub 20 as shown in FIG. 3. Persons of ordinary skill in the art will readily appreciate that the legs 22 may be coupled to the hub 20 in any number of ways. In the illustrated example, each of the legs 22 defines a slot 30 (see FIGS. 7-9) and the hub 20 includes a plurality of pins 32. Each of the pins 32 is positioned in a respective one of the slots 30. <u>The pins 32 and slots 30 are dimensioned such that each of the legs 22 may pivot about its respective pin 32</u> and/or slide along its respective longitudinal axis toward and away from the hub 20. The permitted slide distance is defined by the size o the corresponding slot 30 and the pin 32.

JA-000009 (col. 4, ll. 5-21) (emphasis added).

Based on the foregoing, the claim 28 phrase, "pivoting the leg into a stored position" must be construed as requiring:

> This step requires that the leg must be connected to a fixed member, the "pivot," and turned or rotated about that fixed pivot to a stored position.

Because Kolcraft asserted that Artsana's redesigned play gym infringes claim 28 of the '993 Patent, Artsana respectfully submits that the claim 28 phrase, "pivoting the leg into a stored position," also should be construed with context to Artsana's redesigned play gym.[2] As shown

---

[2] The Federal Circuit has recognized that consideration of the accused product can be a useful context for claim construction, stating:

> [I]n reviewing claim construction in the context of infringement, the legal function of giving meaning to claim terms always takes place in the context of a specific accused infringing device or process. While a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction.

below, Artsana's redesigned playard has a hub with a plurality of sockets and each receives a leg that is loosely tethered to the underside of the hub. In order to move the legs into a stored position, the legs are simply removed from the sockets and loosely daggle from bottom of the hub. An illustration from Artsana's instruction manual for the redesigned play gym is reproduced below.



(**CHI001383**)

Because Kolcraft asserted that Artsana's redesigned play gym infringes claim 28 of the '993 Patent, Artsana submits that the phrase, "pivoting the leg into a stored position," cannot be construed to include a detachable socket connection or a tethered connection between the play gym's legs and the hub.

**E.      Claim 30:  "moving the leg of the play gym toward the hub to secure the leg in the stored position…"**

The claim 30 phrase, "moving the leg of the play gym <u>toward</u> the hub to <u>secure</u> the leg in the stored position" has two components that require construction. First, the term "toward" requires that this phrase be construed to require that the leg of the play gym be displaced toward the hub; it cannot be displaced away from the hub in the stored position. Second, the term "secure" requires that this phrase be construed to require that the leg is substantially fixed or

---

*Wilson Sporting Goods, Co. v. Hellerich & Bradsby Co.,* 442 F.3d 1322, 1326-27 (Fed. Cir. 2006).

immovable without the application of some specific force when it is "secured" in the "stored position."

Artsana's construction of claim 30 is supported by the '993 Patent specification which states:

> … In the illustrated example, each of the legs 22 defines a slot 30 (see FIGS. 7-9) and the hub 20 includes a plurality of pins 32. Each of the pins 32 is positioned in a respective one of the slots 30. The pins 32 and slots 30 are dimensioned such that each of the legs 22 may pivot about its respective pin 32 and/or <u>slide along its respective longitudinal axis toward and away from the hub 20</u>. The permitted slide distance is defined by the size of the corresponding slot 30 and the pin 32.
>
> To bias the legs 22 toward the hub 20, each of the legs is further provided with a spring 36. As shown in FIGS. 7-9, in the illustrated example the springs 36 are helical springs located within respective ones of the legs 22. One end of each of the springs 36 is positioned adjacent an inner end of its respective leg 22, while the other end of each spring 36 abuts one of the pins 32. As a result, absent a countervailing force, the springs 36 force the pins 32 toward the bottom of their respective slots 30 (see FIGS. 7 and 9). In other words, <u>the springs 36 force their respective legs 22 toward the hub 20 unless a countervailing force is applied pulling the legs away from the hubs 20</u>.
>
> To define the stored and extended positions of the legs 22, the hub 20 defines a plurality of cavities 40, 44. A first set of the cavities 40 is positioned <u>to prevent the legs 22 from pivoting when the legs 22 are in the stored position</u>. The second set of cavities 44 is positioned to prevent the legs 22 from pivoting when the legs 22 are in the extended position. Thus, each of the legs 22 is associated with a pair of cavities, namely, one of the cavities 40 from the first set and one of the cavities 44 from the second set.

JA-000009 (col. 4, ll. 13-33) (emphasis added).

In order to move the leg (22) from the extended position (Fig. 9) to the stored position (Fig. 7), the leg must first be displaced <u>away</u> from cavity (44) of the hub (20) against the force of spring (36). The leg is movable toward/away from the hub as defined by slot (30). After being displaced away from the cavity (44), the leg (22) can then be pivoted to the stored position (Figs. 8, Fig. 7). Finally, after the leg (22) is pivoted to the stored position (Fig. 7), the force of the

spring (36) urges the leg (22) <u>toward</u> the hub (20) into cavity (40) in order to prevent the leg from pivoting absent a countervailing force.

The claim 30 phrase, "moving the leg of the play gym <u>toward</u> the hub to <u>secure</u> the leg in the stored position…," refers to the movement of the legs along the slot (30) toward cavity (40), and should be construed as follows:

> The leg of the play gym must be displaced toward the hub, and not away from the hub, to a stored position where the leg is substantially fixed or immovable without the application of a countervailing force to remove it from the stored position.

## VI.  <u>CONCLUSION</u>

Artsana has established that the language of the respective claims, 28-30, the '993 Patent specification and drawings all support its proposed constructions, and requests that this Court adopt the following constructions:

| Claim 28 of the '993 Patent | Proposed Construction |
|---|---|
| The order of steps recited in method claim 28. | The recited steps must be performed in recited sequence. |
| "securing a play gym at least partially above at least one of a bassinet and a play yard …" | Because this phrase omits an essential element for "securing" the play gym, it is broader than the invention described in the '993 Patent specification. |
| "securing the play gym to a mat apart from the play gym and the bassinet," | This phrase is admittedly unintelligble and cannot be construed. |
| "pivoting the leg into a stored position" | This step requires that the leg must be connected to a fixed member, the "pivot," and turned or rotated about that fixed pivot to a stored position. It cannot be construed to include the combination of a freely movable leg and socket or a tethered connection between a leg and the hub. |
| **Claim 30 of the '993 Patent** | **Proposed Construction** |
| "moving the leg of the play gym toward the hub to secure the leg in the stored position…," | The leg of the play gym must be displaced toward the hub, and not away from the hub, to a stored position where the leg is substantially fixed or immovable without the application of a countervailing force to remove it from the stored position. |

Respectfully submitted,

ARTSANA USA, INC.

By: /s/James K. Borcia
           One of Its Attorneys

James K. Borcia
TRESSLER LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000

Anthony S. Volpe
Ryan W. O'Donnell
VOLPE AND KOENIG, P.C.
United Plaza, 30 S. 17th Street
Philadelphia, PA 19103
(215) 568-6400