IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOLCRAFT ENTERPRISES, INC., | Civil Action No. 1:09-cv-03339 |
| Plaintiff, | |
| | Judge Chang |
| | Magistrate-Judge Brown |
| v. | |
| CHICCO USA, INC. d/b/a ARTSANA USA, INC., | |
| Defendant. | |

**PLAINTIFF'S CLAIM CONSTRUCTION RESPONSE**
**REDACTED PUBLIC VERSION**

## TABLE OF CONTENTS

I.      PROCEDURE FOR *MARKMAN* HEARING ...................................................... 1

II.     INTRODUCTION .............................................................................................. 1

III.    APPLICABLE LEGAL STANDARD ................................................................ 2

IV.    KOLCRAFT'S POSITIONS ON CLAIM CONSTRUCTION .......................... 4

      A.     The Steps Of Claim 28 Need Not Be Performed In Sequential Order ................... 4

      B.     "securing a play gym at least partially
above at least one of a bassinet and a play yard" ..................................... 7

              1.     This Phrase Should Be Given Its Plain And Ordinary Meaning ............... 7

              2.     Chicco Has Failed To Prove Invalidity ...................................... 8

      C.     "securing the play gym to a mat
apart from the play gym and the bassinet" ........................................... 11

              1.     The Court Should Correct The Obvious Error In This Limitation .......... 11

              2.     Chicco's Case Law Does Not Support Its Position .................................. 14

              3.     Chicco's Accused Products Meet The Claim Language Identically ........ 17

              4.     Chicco's Alternative Proposed Construction Should Be Rejected ........... 19

      D.     "pivoting the leg into a stored position" .............................................. 20

      E.     "moving the leg of the play gym toward
the hub to secure the leg in a stored position" ..................................... 22

V.     CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

## Federal Cases

*2-Way Computing, Inc. v. Nextel Fin. Co.*,
  2012 U.S. Dist. LEXIS 145839 (D. Nev. Oct. 9, 2012) ........................................7

*3M Innovative Prop. Co. v. Avery Dennison Corp.*,
  350 F.3d 1365 (Fed. Cir. 2003)...............................................................................2

*Alloc, Inc. v. Unilin Decor N.V.*,
  2007 U.S. Dist. LEXIS 16743 (E.D. Wis. Mar. 6, 2007) .....................................17

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (en banc)..............................................................8

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
  345 F.3d 1318 (Fed. Cir. 2003)...............................................................................2

*Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir. 2004)...............................................................................8

*Better Bags, Inc. v. Redi Bag USA LLC*,
  2011 U.S. Dist. LEXIS 6093 (S.D. Tex. Jan. 21, 2011) ........................................7

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004).......................................................................15, 16

*Chi. Mercantile Exch., Inc. v. Tech. Research Group, LLC*,
  782 F.Supp.2d 667 (N.D. Ill. 2011) ........................................................................2

*Comark Communs. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998).............................................................................24

*Computer Docking Station Corp. v. Dell, Inc.*,
  519 F.3d 1366 (Fed. Cir. 2008)...............................................................................3

*Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*,
  291 F.3d 1317 (Fed. Cir. 2002)...............................................................................9

*Ductcap Prods. v. J&S Fabrication Inc.*,
  2012 U.S. Dist. LEXIS 23501 (E.D. Wis. Feb. 24, 2012) .................................4, 17

*Exxon Research & Eng'g Co. v. United States*,
  265 F.3d 1371 (Fed. Cir. 2001)...............................................................................8

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
  607 F.3d 776 (Fed. Cir. 2010)...............................................................................16

*Hoffer v. Microsoft Corp.*,
   405 F.3d 1326 (Fed. Cir. 2005)...............................................................3, 17

*ICU Med., Inc. v. Alaris Med. Sys.*,
   558 F.3d 1368 (Fed. Cir. 2009).....................................................................10

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008).......................................................................3

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001).......................................................................4

*John Mezzalingua Assocs. v. Corning Gilbert Inc.*,
   2012 U.S. Dist. LEXIS 166275 (N.D.N.Y Nov. 21, 2012) ......................7

*Lemelson v. Gen. Mills, Inc.*,
   968 F.2d 1202 (Fed. Cir. 1992)..............................................................3, 17

*Magarl, L.L.C. v. Crane Co.*,
   533 F. Supp. 2d 854 (S.D. Ind. 2008) ..............................................14, 17

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995)...........................................................................2

*Method Elecs., Inc. v. DPH-DAS LLC*,
   2011 U.S. Dist. LEXIS 154923 (E.D. Mich. Sept. 12, 2011)................17

*Metso Minerals Indus. v. Johnson Crushers Int'l, Inc.*,
   2011 U.S. Dist. LEXIS 136305 (E.D. Wis. Nov. 28, 2011) ................17

*Metso Paper, Inc. v. Enerquin Air Inc.*,
   2008 U.S. Dist. LEXIS 111081 (E.D. Wis. July 23, 2008) ................17

*Netcraft Corp. v. Ebay, Inc.*,
   549 F.3d 1394 (Fed. Cir. 2008)....................................................................24

*Netword LLC v. Central Corp.*,
   242 F.3d 1347 (Fed. Cir. 2001)......................................................................3

*Novo Industries L.P. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed Cir. 2003)...............................................4, 11, 14, 15

*Pall Corp. v. Micron Separations*,
   66 F.3d 1211 (Fed. Cir. 1995)......................................................................25

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc)..............................2, 3, 7, 20

*Rembrandt Data Techs, LP v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011)........................................................................16

*Rexnord Corp. v. Laitram corp.*,
    274 F.3d 1336 (Fed. Cir. 2001)..................................................................3, 22

*Safe Bed Techs. Co. v. KCI USA, Inc.*,
    2004 U.S. Dist. LEXIS 17773 (N.D. Ill. Sept. 2, 2004) .........................................17

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1985)........................................................................3

*Sunbeam Prods. v. Hamilton Beach Brands, Inc.*,
    2010 U.S. Dist. LEXIS 85281 (E.D. Va. Aug. 19, 2010)...........................7, 20, 21

*W.E. Hall Co., Inc. v. Atlanta Corrugating LLC*,
    370 F.3d 1343 (Fed. Cir. 2004)........................................................................2

## Federal Statutes

35 U.S.C. § 112 ¶ 1 ........................................................................................2

## I.   PROCEDURE FOR *MARKMAN* HEARING

Pursuant to the Court's Order of December 5, 2012, Plaintiff hereby requests an in-court *Markman* hearing at the earliest date available to the Court. Plaintiff submits that attorney argument should be sufficient and anticipates the entire hearing can be conducted in approximately two hours total. However, if the Court desires, Plaintiff is also willing to have live testimony from witnesses, including the co-inventor Peter Myers and prosecution counsel, James Flight.

## II.   INTRODUCTION

U.S. Patent No. 7,376,993 was filed in the PTO on December 1, 2003. After more than four years of examination, the disputed claims 28-31 issued on May 27, 2008. Chicco then initiated a burdensome, expensive and time consuming reexamination on November 2, 2009 – from which claims 28-31 emerged without amendment. Now that the parties and the Court have received the benefit of the PTO's "expert analysis"[1] after years of reexamination, Chicco asks this Court to summarily invalidate claims 28-31 under 35 U.S.C. § 112 without providing any evidence whatsoever, much less clear and convincing evidence.

As shown below, claims 28-31 easily comply with Section 112 based upon the claims themselves, the specification and the prosecution history – as well as the testimony of Chicco's own witness, Mr. Mark Messner, the declaration of a Chicco third party customer, Ms. Tiffany Manzella, and the declaration of co-inventor Peter Myers, in contrast to Chicco's ***complete absence*** of evidence. When Chicco does propose particular definitions for claims 28-31, Chicco's arguments violate fundamental tenants of claim construction. Accordingly, Chicco's proposed constructions should be rejected in favor of Kolcraft's.

---

[1]   Chicco Motion to Stay, Dkt. 50, p. 8.

## III.    APPLICABLE LEGAL STANDARD

Claim construction is a question of law exclusively for the court. *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 977-979 (Fed. Cir. 1995).   The general principles of claim construction are well settled.  *Chi. Mercantile Exch., Inc. v. Tech. Research Group, LLC,* 782 F.Supp.2d 667, 670-671 (N.D. Ill. 2011); *Phillips v. AWH Corp*., 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

Particularly applicable to the issues before this Court is the "heavy presumption that the claim terms carry their ordinary and customary meaning."  *W.E. Hall Co., Inc. v. Atlanta Corrugating LLC*, 370 F.3d 1343, 1350 (Fed. Cir. 2004); *3M Innovative Prop. Co.* v. *Avery Dennison Corp.*, 350 F.3d 1365, 1370 (Fed. Cir. 2003). The proper definition of a claim term is the "definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record." *Phillips*, 415 F.3d at 1314 (citations omitted). The context of surrounding words in the claim must also be considered in determining the ordinary and customary meaning of a disputed claim term. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1325 (Fed. Cir. 2003).

The claims themselves do not stand alone, but rather are part of a "fully integrated written instrument." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 978). Thus, the claims "must be read in view of the specification, of which they are a part." *Id.* The specification is "the primary basis for construing the claims" and "the single best guide to the meaning of a disputed term." *Id.* "The importance of the specification in claim construction derives from its statutory role. The close kinship between the written description and the claims is enforced by the statutory requirement that the specification describe the claimed invention in 'full, clear, concise, and exact terms.'"  *Id.* at 1316 (quoting 35 U.S.C. § 112 ¶ 1). Accordingly, the claims do not

have meaning removed from the context from which they arose. *Id.* (quoting *Netword LLC* v. *Central Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001)).

The Court should never lose sight that while claims must be construed in light of the specification, limitations from the preferred embodiments or specific examples in the specification cannot be read into the claims. *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008) ("this court will not countenance the importation of claim limitations from a few specification statements or figures into the claims"); *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1370 (Fed. Cir. 2008) ("[T]his court will not at any time import limitations from the specification into the claims."). The Federal Circuit has explained the reasoning behind this fundamental canon of claim construction:

> If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment....It is the *claims* that measure the invention.

*SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (emphasis in original). Thus, while the specification may be used to aid in the interpretation of the claims, it may not be used as a source for adding extraneous limitations. *Rexnord Corp.* v. *Laitram corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001) ("Specifications teach. Claims claim.").

Also important here, as discussed in more detail below, is that district courts have authority to correct typographical errors in a claim term. *Lemelson v. Gen. Mills, Inc.,* 968 F.2d 1202, 1203, n.3 (Fed. Cir. 1992) (permitting correction inserting the word "toy" in a claim where the patent on its face was clearly directed at a toy trackway rather than an actual trackway and "[t]he deletion of 'toy' appears from the record of the proceedings before the PTO to have been an inadvertent error."); *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) (a harmless error in a patent not subject to reasonable debate can be corrected by the court). A

- 3 -

district court is expressly authorized to correct a mistake in a claim if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification, and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Industries L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed Cir. 2003).

## IV.   KOLCRAFT'S POSITIONS ON CLAIM CONSTRUCTION

### A.   The Steps Of Claim 28 Need Not Be Performed In Sequential Order

Although a method claim necessarily recites the method steps in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited. See, e.g. *Ductcap Prods. v. J&S Fabrication Inc.*, 2012 U.S. Dist. LEXIS 23501, 19-20 (E.D. Wis. Feb. 24, 2012) ("[U]nless a method claim actually recites an order, the steps are not necessarily construed to require one."); *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001) (method claims should not be construed to require sequential order, unless "the method steps implicitly require that they be performed in the order written").

With respect to claim 28, there is no explicit language in the claim requiring performance of the steps in any sequential order (i.e. "First, Second, Third.") and there clearly is no implicit requirement for such an order. The specific steps of claims 28 are identified below and have been numbered solely for reference herein.

    (1)    securing a play gym at least partially above one of a bassinet and a play yard;

    (2)    removing the play gym from the at least one of the bassinet and the play yard;

    (3)    securing the play gym to a mat apart from the play gym and the bassinet;

    (4)    removing the play gym from the mat; and

    (5)    collapsing the play gym wherein collapsing the play gym comprises:

    (6)    pulling the leg of the play gym in a direction away from a hub; and

(7)     pivoting the leg into a stored position.

(JA_12, Col. 10, lines 7-18).

In simplified form, claim 28 requires: securing and removing the play gym from the bassinet or play yard (steps 1 and 2), securing and removing the play gym from a mat apart from the bassinet or play yard (steps 3 and 4), and collapsing the play gym into a stored position (steps 5, 6 and 7). The order in which these steps are completed depends entirely on the consumer. In some cases, the user may wish to *first* secure the play gym to the mat apart from the play yard (step 3), then remove the play gym from the mat (step 4), then secure the play gym to the bassinet or play yard (step 1), such as when the child plays on the mat first and is later put down for a nap in the bassinet. There is nothing in the claim language or specification that prohibits steps 3 and 4 from being performed by the user prior to steps 1 and 2. Likewise, a user might decide to store the play gym (steps 5, 6 and 7) after removing it from the bassinet (step 2), instead of immediately attaching it to the mat (step 3).

Although Chicco asserts that the Court should construe claim 28 as requiring the steps to be performed in the precise order written, Chicco only articulates that step 1 be performed before step 2, and that step 3 be performed before step 4. Chicco says that "[i]n order to perform the second step of claim 28, 'removing the play gym from the at least one of the bassinet and the play yard' *it is logical* that the play gym must first be secured at least partially above at least one of a bassinet and a play yard' as recited in the first step of claim 28" (Dkt. 146, p. 10)(emphasis added). However, even if the Court were to construe claim 28 to require that the "removing" steps (i.e. steps 2 and 4) must be completed after the respective "securing" steps (i.e. steps 1 and 3), there is still more than one way in which the method can be completed. For example, as discussed above, it is also logical that someone could complete the method in the following order: 3-4-1-2-5-6-7 *or* 3-4-5-6-7-1-2 *or* any other number of possible combinations.

- 5 -

In fact, a key feature of the claimed invention is that the play gym can be secured partially above and used with the play yard or bassinet and it can also be separately secured to and used with the mat on the floor:



(JA_3-4; see also, Exhibit 1, Myers Decl., ¶7). The ability to perform multiple functions, based on the user's needs, is a significant benefit of this invention. The specification discusses a "first mode" shown in Figure 1 where the play gym 10 (orange) is used with the play yard 14 (blue); and a "second mode" shown in Figure 2 where the play gym 10 is used separately with the mat 16 (green) on "another surface such as the floor of a house" (JA_8, Col. 2, lines 36-49; see also JA_11, Col. 7, lines 1-16).

To construe the claim as requiring that the steps can only be performed in one specific sequential order would improperly limit the scope of this claim without any support in the claim language itself, the specification or the prosecution history. There is no basis to limit performance of the steps of claim 28 to the exact order in which the steps are recited in the claim. Chicco's proposed construction should be rejected.

**B.** **"securing a play gym at least partially above at least one of a bassinet and a play yard"**

    **1.** **This Phrase Should Be Given Its Plain And Ordinary Meaning**

The terms of this phrase are common and easily understandable words not in need of new or different words to better define the phrase. These terms do not require further construction.

As quoted in Chicco's opening brief: "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than application of the widely accepted meaning of commonly understood words" (Dkt. 146, p.5, quoting *Philips*, 415 F.3d at 1314). See also *2-Way Computing, Inc. v. Nextel Fin. Co.,* 2012 U.S. Dist. LEXIS 145839 at *42 (D. Nev. Oct. 9, 2012) (holding that the straightforward term "managing the operations" has a plain and ordinary meaning, and no further claim construction is required); *Better Bags, Inc. v. Redi Bag USA LLC*, 2011 U.S. Dist. LEXIS 6093 at *21 (S.D. Tex. Jan. 21, 2011) ("The Court thus finds that the term 'handle formed from a generally central area' is clear and needs no construction."); *John Mezzalingua Assocs. v. Corning Gilbert Inc.,* 2012 U.S. Dist. LEXIS 166275 at *2-6 (N.D.N.Y Nov. 21, 2012) (denying defendant's objection to recommendation that a plain meaning construction – i.e. no construction at all – should be applied to certain claim terms):

> Furthermore, the court agrees that the terms are 'comprised of three words each of which is of ordinary usage and fully capable of being understood by a person reading the patents at issue.' As such, the ordinary and customary meaning approach that Judge Peebles recommended is both adequate and appropriate in this case.")(internal citations omitted).

See also, *Sunbeam Prods. v. Hamilton Beach Brands, Inc*., 2010 U.S. Dist. LEXIS 85281 at *15-16 (E.D. Va. Aug. 19, 2010) ("The Defendants have adduced no reason to construe 'cap,' one of the more basic nouns in the English language. There is nothing about any of the claim language

that would require 'cap' to be defined differently in different contexts. Thus, as to this claim term, no construction is required – no benefit to claim scope or clarity would accrue from defining a cap in terms of synonyms such as 'lid' or 'cover.'").

As indicated, the "securing" phrase in claim 28 uses common words, easily understandable to anyone of skill in the art – there is no need to add more expansive words to better define the term. Tellingly, Chicco does not offer a proposed construction for this term.

### 2.    Chicco Has Failed To Prove Invalidity

Instead of offering a construction, Chicco asks the Court to invalidate claim 28 because it allegedly "omits any structure or element for the recited step of 'securing a play gym at least partially above at least one of a bassinet and a play yard'" (Dkt. 146, p. 10).  Chicco has not offered ***any*** evidence, much less the necessary clear and convincing evidence, that claim 28 lacks a sufficient written description pursuant to 35 U.S.C. § 112:

> If one skilled in the art would understand the bounds of the claim when read in light of the specification, then the claim satisfies section 112, paragraph 2.
>
> * * * *
>
> If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds.

*Exxon Research & Eng'g Co. v. United States,* 265 F.3d 1371, 1375 (Fed. Cir. 2001) (reversing the district court's finding of indefiniteness).  Close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee. *Id.*; see also *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.,* 359 F.3d 1367, 1372 (Fed. Cir. 2004); *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Even drawings alone may constitute an adequate "written description" if they describe what is claimed and convey to

those of skill in the art that the patentee actually invented what is claimed. *Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317, 1322 (Fed. Cir. 2002).

When read in the context of the entire patent, one of ordinary skill in the art[2] would clearly understand this phrase (Exhibit 1, Myers Decl., ¶8). The specification of the '993 patent makes clear to a person of ordinary skill in the art how to perform the step of "securing a play gym at least partially above at least one of a bassinet and a play yard," for example:

> Preferably the legs 22 are selected such that, after being bent, the legs 22 will seek to return to their original, generally straight condition (see FIG. 3). As a result, when the legs 22 are bent into the arched position shown in FIG. 1, each of the ends of the legs 22 will apply a force away 30 from the center of the bassinet 12 and/or the play yard 14 seeking to return the legs 22 into the straight position. These forces act to bias the hub 20 upward away from the bassinet 12 and/or the play yard 14 and to bias the free ends of the legs 22 into tight engagement with the sides of the pockets 35 50 (and, thus, with the frame of the bassinet 12 and/or play yard 14) to **thereby securely hold the play gym10 above the bassinet 12 and/or the play yard 14.**

(JA_10, Col. 5, lines 26-38; emphasis added).

> In operation, a user wishing to use the play gym 10 may first erect a bassinet 12 and/or a play yard 14. Erecting the bassinet 12 and/or the play yard 14 may include positioning a floor mat 16 within one or both of the bassinet 12 and the play yard 14. **The user may then secure the play gym 10 at least partially above one or both of the bassinet 12 and the play yard 14 by, for example, inserting the feet 68 of the legs 22 into the connectors 50 of the bassinet 12 and/or play yard 14 or into the connectors of the mat 16**.

(JA_11, Col. 7, lines 1-9; emphasis added).

The portion of the specification cited by Chicco (below) further demonstrates sufficient written description:

> To removably couple the play gym 10 to at least one of the bassinet 12 and the play yard 14, at least one of the mat 16, the bassinet 12 and the play yard 14 is provided with connectors 50. Persons of ordinary skill in the art will readily

---

[2]     Kolcraft submits a person of ordinary skill in the art related to the '993 patent is someone with a B.S. degree in mechanical engineering or industrial design, and two to three years' experience in the juvenile products industry.

appreciate that the connectors 50 may be implemented in any number of ways. In the illustrated example, the connectors 50 are implemented by fabric pockets 50 which are sewn or otherwise fastened adjacent the corners of the bassinet 12 and/or the play yard 14 (see FIG. 6). The ends of the legs 22 opposite the hub 20 are positioned in respective ones of these pockets 50 to thereby couple the play gym10 to the bassinet 12 and/or the play yard 14.

(JA_10, Col. 5, lines 4-15).  This basic step of securing the play gym at least partially above the play yard is depicted in the patent drawings as well (see Figure 1, JA_3).

Chicco relies on *ICU Med.*, where the court held that the term "spike" in the claim at issue was limited to a pointed tip for piercing a seal because every example in the specification depicted a pointed spike; every figure depicted the spike piercing a seal; piercing was not optional; and the patentee failed to offer any support from intrinsic or extrinsic sources in support of its contention that the ordinary meaning of spike would include a non-pointed structure.  *ICU Med., Inc. v. Alaris Med. Sys.,* 558 F.3d 1368 (Fed. Cir. 2009).  Here, however, the specification clearly describes and shows to one of ordinary skill in the art how the play gym is secured at least partially above at least one of a bassinet and a play yard.

Moreover, with respect to the accused product, Chicco's own witness, President and CEO Mr. Mark Messner, had no trouble testifying that the play gym is secured at least partially above the play yard:

R
E
D
A
C
T
E
D

(Exhibit 3, Messner Dep., p. 53-54; objections omitted, emphasis added).  Likewise, a third party customer of Chicco's stated in a sworn declaration that she "secured the play gym at least

- 10 -

partially above the bassinet and the play yard" in the accused products (Exhibit 4, Manzella Decl., ¶ 6).

The co-inventor of the '993 patent clearly understood the securing step in claim 28 as would anyone of skill in the art (Exhibit 1, Myers Decl., ¶8). The PTO also found that this phrase is adequately supported when it issued claim 28 on May 27, 2008 and confirmed claim 28 again (unamended) during reexamination. The only people that allegedly do not know what the common word "securing" means are Chicco's lawyers, which falls hopelessly short of the burden to invalidate a U.S. patent.

This phrase is easily understandable in the basic structure described in claim 28. Therefore, although invalidity issues (i.e. whether claim 28 is invalid under 35 U.S.C. § 112 as Chicco contends) are not now before this Court, Kolcraft has shown that the written description plainly supports asserted claim 28. Chicco has presented no evidence to the contrary, much less clear and convincing evidence. In addition, because Chicco offered no construction of this term, The Court should conclude that the term stands on its own and does not require construction.

C.  **"securing the play gym to a mat
apart from the play gym and the bassinet"**

1.  **The Court Should Correct The Obvious Error In This Limitation**

A Court is authorized to correct a mistake in a claim if "(1) the correction is not subject to a reasonable debate based on consideration of the claim language and the specification, and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Industries*, 350 F.3d at 1354. Chicco does not apply this Federal Circuit two part test anywhere in its brief – in fact, the two part test is not even mentioned by Chicco. Instead, Chicco relies upon legally irrelevant and incorrect arguments, such as Kolcraft's allegedly "belated request for this Court to correct claim 28 more than 3-1/2 years into this litigation" or that Kolcraft should

- 11 -

have sought correction in the "pending USPTO reexamination proceeding" or that Kolcraft "proceeded with this infringement litigation on the basis of this erroneous claim" or the "error in claim 28 cannot be fixed in litigation" (Dkt. 146, p. 14-15, 17)[3]. The fact that Chicco ignored the two part test (which this Court must apply under controlling Federal Circuit precedent) demonstrates the weakness of Chicco's substantive position.

The inadvertent error in claim 28 is easily recognized, and the clear and only correction is easily understood. The claim should be corrected to read: "securing the play gym to a mat apart from the play ~~gym~~ **yard** and the bassinet" (text with strike though to be deleted, and underlined bold text to be added). The claim including the proposed correction should read in its entirety:

A method comprising:

securing a play gym at least partially above at least one of a bassinet and a play yard;

removing the play gym from the at least one of the bassinet and the play yard;

securing the play gym to a mat apart from the play **yard** and the bassinet;

removing the play gym from the mat; and

collapsing the play gym, wherein collapsing the play gym comprises:

pulling a leg of the play gym in a direction away from a hub; and

pivoting the leg into a stored position

(JA_12; emphasis added).

The correction proposed by Kolcraft is not subject to reasonable debate based on consideration of the specification, drawings and claim language. The claim language as written

---

[3]     Kolcraft is raising this issue at the exact time permitted under the law (claim construction), which was only delayed for "3-1/2 years" because *Chicco* decided to attack claims 28-31 in a several year reexamination proceeding, without success.

requires something impossible – securing a play gym to a mat apart from itself.  This was an obvious typographical error.  Indeed, the specification provides clear guidance:

> ***If the user wishes to use the play gym 10 apart from the bassinet 12 and the play yard 14,*** the user may remove the play gym 10 from the bassinet 12 and/or the play yard 14 by, for example, withdrawing the feet from the connectors 50. If the user desires to use the play gym 10 with the mat 16, the user may then remove the mat 16 from the bassinet 12 and/or the play yard 14 and position the mat 16 in a desired location of use. If pivotable connectors 60 are employed as in the illustrated example, the user may then pivot the connectors 60 out from their first positions within the perimeter of the mat 16 to their second positions outside the perimeter of the 20 mat 16*. **The user may then secure the play gym 10 to the floor mat 16 by, for example, inserting the feet 68 of the legs 22 into corresponding ones of the apertures 64 of the connectors 60***.

(JA_11, Col. 7, lines 10-24).  Additionally, the specification of the '993 patent makes other references to use of the play gym apart from the play yard:  "[w]hen, however, it is desired to use the mat 16 with the play gym 10 ***apart from the bassinet 12 and/or the play yard***…" (JA_10, Col. 6, lines 33-37).

This disputed limitation refers to Figure 2 of the '993 patent.  Notably, "FIG. 2 is a perspective view of the example play gym of FIG. 1 when removed from the play yard and bassinet, and coupled to a floor mat of the play yard and bassinet" (JA_8, Col. 2, lines 1-3):



*Fig. 2*

(JA_4).

The relevant context, including at least the specification and Figure 2, makes clear to a person having ordinary skill in the art that the scope of the patentees' right to exclude includes a

play gym secured to a mat apart from the play **yard** and bassinet. The second reference to "play gym" in this limitation – "securing the play gym to a mat apart from the play ~~gym~~ and the bassinet" – is an obvious typographical error intended to be "play yard."  Chicco does not even try to claim that a correction is subject to reasonable debate when the specification and drawings are consulted.

In addition, Chicco points to nothing in the prosecution history that would suggest a different interpretation of this claim.  For example, there are no statements or arguments by the patent owner during the prosecution history that would suggest the inventors actually ***intended*** the claim to read "securing the play gym to a mat apart from the play gym."  In fact, the co-inventor of the '993 patent even acknowledged the typo in this limitation and stated that this phrase was intended to say "securing the play gym to a mat apart from the play yard and bassinet." (Exhibit 1, Myers Decl., ¶6).  Because correction of the language in claim 28 is (1) not subject to a reasonable debate when considering the claim language itself and the specification, and (2) the prosecution history does not suggest a different interpretation of the claims, this Court should make the simple correction to "play yard."  *Magarl, L.L.C. v. Crane Co*., 533 F. Supp. 2d 854, 883 (S.D. Ind. 2008) ("when read in light of the specification, it is reasonably clear that "said adjustable flow control member" means "an adjustable control member.").  Kolcraft submits that the Court should correct the obvious typographical error in this claim consistent with the drawings, specification and prosecution history.

## 2.    Chicco's Case Law Does Not Support Its Position

Chicco cites *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed. Cir. 2003), which sets forth the two part test ignored throughout Chicco's brief.  Worse, the Federal Circuit in *Novo* expressly **rejected** the same argument made by Chicco here: i.e., that Kolcraft was somehow obligated to correct the typographical error in the PTO, rather than in the district court:

- 14 -

> Thus, if we were to hold that the district court was powerless to correct any and all errors when construing the patent, every patent containing an error that makes a claim indefinite would be invalid until and unless corrected by the PTO. … We see no evidence that Congress intended to impose such a draconian result (barring any corrections by the district court) by the enactment of Sections 255 and 254 or to change existing law in this respect.

*Id.* at 1356.

From a factual standpoint, in *Novo*, the nature of the error was "not apparent from the face of the patent." *Id.* at 1357. In fact, the patent owner "itself suggested two different corrections" for the disputed phrase and the interpretation by the district court "raised still a third possibility." *Id.* Further, the specification in the patent did "not provide the necessary clarity to overcome the ambiguity of the claim" and "the prosecution history undermines [the patent owner's] argument." *Id.* Accordingly, the *Novo* court concluded that "in order to make sense out of the patent, the district court was required to guess at what was intended." *Id.* at 1358. The case before this Court stands in stark contrast to *Novo* because, here, there is only one possible interpretation of claim 28 (i.e., "play ~~gym~~ yard"), not three interpretations. Kolcraft's suggested construction is fully and consistently supported throughout the specification and is not undermined by the prosecution history in any way. This Court does not have to guess at what was intended in claim 28.

Chicco also relies upon *Chef Am., Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371 (Fed. Cir. 2004), where the disputed claim language required "heating the resulting batter-coated dough to a temperature in the range of about 400º F to 850º F." *Id.* Despite this clear and unambiguous claim language, the patentee tried to interpret the temperature limitation as applying to the air temperature in the oven, not the dough, because dough would be "burned to a crisp" at that temperature. *Id.* at 1373. The Federal Circuit correctly held:

> These are ordinary, simple English words whose meaning is clear and unquestionable. There is no indication that their use in this particular conjunction

> changes their meaning. They mean exactly what they say. The dough is to be
> heated to the specified temperature. Nothing even remotely suggests that what is
> to be heated is not the dough but the air inside the oven in which the heating takes
> place. Indeed, the claim does not even refer to an oven.

*Id.* The prosecution history in *Chef Am.* also suggested that "the patentees intentionally used 'to' rather than 'at' in drafting the temperature requirements of the claim," *Id.* at 1374, which further refuted the patentees' proposed claim construction. In the end, the Federal Circuit "declined to rewrite [the] unambiguous patent claim language." *Id.* at 1375. The claim in *Chef Am.* made perfect sense exactly as written, which could not be further from the circumstances here.

Similarly, in *Haemonetics Corp. v. Baxter Healthcare Corp.,* 607 F.3d 776 (Fed. Cir. 2010), the claim language "could hardly be clearer" as it "unambiguously defines 'centrifugal unit' as 'comprising' two structural components: a centrifugal component and a plurality of tubes." *Id.* at 781-82. The specification had a specific embodiment directed to a centrifugal unit that "includes a centrifugal component **and** a plurality of tubes." *Id.* at 782 (emphasis in original). In contrast, the Kolcraft '993 patent does not have any embodiment directed to a play gym secured to a mat apart from the play gym – nor could there be any such embodiment, as it is a physical impossibility.

Chicco also cites *Rembrandt Data Techs, LP v. AOL, LLC,* 641 F.3d 1331 (Fed. Cir. 2011). In *Rembrandt*, the Federal Circuit applied the two part test set forth in *Novo* – which, again, is curiously omitted in Chicco's analysis – and concluded that the disputed claim was invalid since it recited both an apparatus and a method of using that apparatus in the same claim. *Id.* at 1339. The correction suggested by the patent owner was not "obvious" nor was it "free from reasonable debate," nor did the patent owner show that one of skill in the art would read the correction into the claim. *Id.* at 1339-40.

Unlike these completely distinguishable cases relied upon by Chicco, the fact pattern before this Court fits within the plethora of decisions that correct obvious errors in claim language.  See, e.g., *Hoffer*, 405 F.3d 1326 at 1331(Fed. Cir. 2005) (holding that a district court errs when it fails to correct an error that is evident on the face of the patent); *Lemelson,* 968 F.2d 1202, 1203 & n.3 (Fed. Cir. 1992); *Metso Minerals Indus. v. Johnson Crushers Int'l, Inc.*, 2011 U.S. Dist. LEXIS 136305 at *16-19 (E.D. Wis. Nov. 28, 2011) (correcting minor typo in the patent claim language by changing "said bowl" to "said cone."); *Method Elecs., Inc. v. DPH-DAS LLC*, 2011 U.S. Dist. LEXIS 154923 at *13-17 (E.D. Mich. Sept. 12, 2011) (holding proper construction of the term "silicon" in claims 4 and 10 is that a typographical error was made in drafting the claims and it should be corrected and construed as "silicone"); *Metso Paper, Inc. v. Enerquin Air Inc.,* 2008 U.S. Dist. LEXIS 111081, 224-225 (E.D. Wis. July 23, 2008); *Alloc, Inc. v. Unilin Decor N.V.*, 2007 U.S. Dist. LEXIS 16743 (E.D. Wis. Mar. 6, 2007) (holding that "locking means" as used in claims 7 and 52 of the '486 patent is replaced with "locking element"); *Ductcap Prods.,* 2012 U.S. Dist. LEXIS 23501 at *8-9 (adding an "e" to the word "envelop" several times in the claims when patentee should have written "envelope.").  See also, *Magarl,* 533 F.Supp.2d at 883 (noting that "when read in light of the specification, it is reasonably clear that "said adjustable flow control member" means "an adjustable control member."); *Safe Bed Techs. Co. v. KCI USA, Inc.*, 2004 U.S. Dist. LEXIS 17773, 62-64 (N.D. Ill. Sept. 2, 2004).

### 3.    Chicco's Accused Products Meet The Claim Language Identically

Again, Chicco readily acknowledges that "consideration of the accused product can be a useful context for claim construction" (Dkt. 146, p. 20, n.2).  Mr. Messner conceded that Chicco's customers secure the Chicco play gym to the mat apart from the play yard and bassinet:

R
E
D
A
C
T
E
D

(Exhibit 3, Messner Dep. at 54-56; objections omitted).  Also, Chicco's third party customer Ms.

Manzella declared that in using the Chicco accused product, she "secured the play gym to the

floor mat as a standalone unit, as shown in the attached photo 2 [below]" (Exhibit 4, Manzella

Decl., ¶ 6).



(Exhibit 4, p. 4).  Additionally, Chicco's instruction manual shows how to secure the play gym to

the mat apart from the play yard:



(Exhibit 2).

One of the main features of the '993 patent discussed and shown throughout the specification – and used identically in the infringing Chicco product – is to use the play gym with the play yard and bassinet, and also use of the play gym with the mat, as a stand-alone unit, apart from the play yard and bassinet. This further supports the obvious correction that should be made on claim construction to claim 28: "securing the play gym to a mat apart from the play ~~gym~~ **yard** and the bassinet."

### 4. Chicco's Alternative Proposed Construction Should Be Rejected

Oddly, although Chicco argues that claim 28 is unintelligible and cannot be given any reasonable meaning (and is therefore invalid under 35 U.S.C. § 112), it also appears to have offered a proposed construction for this limitation. Chicco states that "[t]o the extent that the phrase 'securing the play gym to a mat apart from the play gym and the bassinet' is construed to be valid, the term 'apart' must be construed to require that the mat be a mat separate from that used in the bassinet or the play yard" (Dkt. 146, p. 17). Chicco does not even attempt to offer any

- 19 -

factual basis for its proposed construction of this limitation; nor could it, since its construction is not supported by the claim language, specification or prosecution history.

Indeed, the '993 patent expressly contemplates what Chicco's proposed construction seeks to prohibit – i.e. that the mat used in the bassinet or play yard can be the same mat as used separately with the play gym:  "If the user desires to use the play gym 10 with the mat 16, the user *may remove the mat 16 from the bassinet 12* and/or the play yard 14 and position the mat 16 in a desired location of use" (JA_11, Col. 7, lines 13-17; emphasis added) (See also JA_10, Col. 6, lines 33-37 and JA_11, Col. 7, lines 10-24:  "When … it is desired to use *the mat 16* with the play gym 10 apart from the bassinet 12 and/or play yard 14 …"; emphasis added). Chicco's proposed construction of this limitation is completely misguided and must be rejected.

### D.    "pivoting the leg into a stored position"

The limitation "pivoting the leg into a stored position" appears in claim 28 of the '993 patent. This phrase should be given its plain and ordinary meaning and does not require construction by this Court. *Phillips,* 415 F.3d at 1314.  The plain everyday meaning of the phrase is sufficient, and adding new or different words will not provide a better definition than the current words themselves.  *Sunbeam Prods*., 2010 U.S. Dist. LEXIS 85281 at 15-16 ("[A]s to this claim term, no construction is required – no benefit to claim scope or clarity would accrue from defining a cap in terms of synonyms such as 'lid' or 'cover.'").

Chicco argues that this straightforward phrase should be construed "to require that the leg be connected to a fixed member, such as a shaft or pin, and turned or rotated about the fixed member to a stored position" (Dkt. 146, p. 18). Chicco cites to the dictionary definition of pivot, but incorrectly quotes the *noun* definition, when the actual term in claim 28 (a method claim) is a *verb*, pivoting.  Chicco's dictionaries define pivoting as "the act of turning on or *as if* on a

pivot" which is much broader than the claim construction proposed by Chicco (Dkt. 146-1 and 146-2).

Chicco also asserts that this phrase "cannot be construed to include a detachable socket connection or a tethered connection between the play gym's legs and the hub" (Id., p. 21). Chicco's proposed construction deviates from the plan language of claim 28 and seeks to import unnecessary limitations into the claim solely in an effort to twist the claim in a manner that avoids infringement. For example, Chicco asserts that this phrase requires that "the leg must be connected to a fixed member, such as a shaft or pin, and turned or rotated about the fixed member" (Dkt. 146, p.18). It should be noted that the phrase "fixed member" is not found anywhere in the '993 patent. And, Chicco also wants the Court to construe the phrase to include various examples: "such as, a shaft or a pin" – examples which Chicco has expressly included in its proposed construction of this term.

Yet, using these examples "such as, a shaft or pin" to define this phrase is improper and would be overly limiting. See MPEP 2173.05(d). Significantly, the specification expressly contradicts Chicco's position:

> Persons of ordinary skill in the art will readily appreciate that ***the legs 22 may be coupled to the hub 20 in any number of ways***. In the illustrated ***example***, each of the legs 22 defines a slot 30 (see FIGS 7-9) and the hub 20 includes a plurality of pins 32.

(JA_9, Col. 4, lines 11-15; emphasis added). As expressly stated, this is only one example of how the leg can be coupled to the hub. And, the co-inventor of the '993 patent stated that this phrase was not intended to be limited to "turning or rotating the leg about a shaft or a pin. (Exhibit 1, Myers Decl., ¶9). While the specification may be used to aid in the interpretation of the claims, it may not be used as a source for adding extraneous limitations, so Chicco's

proposed construction violates one of the most fundamental principles of claim construction. *Rexnord,* 274 F.3d at 1344 ("Specifications teach. Claims claim.").

Chicco should not be permitted to improperly import unnecessary and unsupported limitations into this claim. Its own witness, again, had no trouble understanding the word "pivot" as used in this context:

R
E
D
A
C
T
E
D

(Exhibit 3, Messner Dep., p. 60; emphasis added, objections omitted) (see also Exhibit 4, Manzella Decl., ¶ 6(e): "[I] collapse the play gym by pulling the leg of the play gym in a direction away from the hub and pivoting the leg in a stored position."). There is no reason to expand upon the common terms "pivoting" or "stored position." Accordingly, Kolcraft contends that this phrase should be given its plain and ordinary meaning.

E.    **"moving the leg of the play gym toward
        the hub to secure the leg in a stored position"**

The term "moving the leg of the play gym toward the hub to secure the leg in a stored position" is found in dependent claim 30 of the '993 patent. Chicco wants this Court to construe this term to mean: "[t]he leg of the play gym must be displaced toward the hub, not away from the hub, to a stored position where the leg is substantially fixed or immoveable without the application of a countervailing force to remove it from the stored position." Chicco's proposed construction is overly complicated and seeks to add many unnecessary limitations in order to

improperly limit the scope of this claim. Indeed, the construction offered by Chicco is so complex that it would not aid in the meaning of this claim.

In this instance, Kolcraft submits that the plain language of this phrase is easily understood. (Exhibit 1, Myers Decl., ¶10). Even the third party customer of Chicco's explained during her deposition that she understood what this phrase meant:

Q.    How did you move the leg toward the hub?

A.    I folded the leg down. If the hub is in the center, I folded the leg toward the center.

Q.    And folding the leg would move the leg toward the hub?

A.    Yes.

(Exhibit 5, Manzella Dep., p. 22).

Chicco asks the Court to construe this phrase to include extra limitations such as, "where the leg is substantially fixed or immoveable without the application of a countervailing force to remove it from the stored position."  Chicco merely seeks to overly limit the scope of this claim. For example, the specification describes the "stored position" as follows:

> In the illustrated example, the legs 22 are pivotably coupled to the hub 20 such that they can be pivoted between a ***stored position wherein the legs 22 are positioned generally parallel to each other as shown in FIG. 4***, and an extended position wherein the legs 22 extend generally 10 radially outward from the hub 20 as shown in FIG. 3. Persons of ordinary skill in the art will readily appreciate that the legs 22 may be coupled to the hub 20 in any number of ways.

(JA_9, Col. 4, lines 5- 13). Accordingly, the phrase "stored position" of claim 30 merely requires that the legs are positioned generally parallel to each other as shown in FIG. 4 below – *not* that the legs are substantially fixed or immoveable without the application of a countervailing force to remove it from the stored position, as Chicco contends.

- 23 -



*Fig. 4*

(JA_5).

Chicco relies in part on one illustrated example from the specification that includes a spring force:

> To bias the legs 22 toward the hub 20, each of the legs is further provided with a spring 36. As shown in FIGS. 7-9, **in the illustrated example** the springs 36 are helical springs located within respective ones of the legs 22. One end of each of the springs 36 is positioned adjacent an inner end of its respective leg 22, while the other end of each spring 36 abuts one of the pins 32. As a result, absent a countervailing force, the springs 36 force the pins 32 toward the bottom of 30 their respective slots 30 (see FIGS. 7 and 9). **In other words, the springs 36 force their respective legs 22 toward the hub 20 unless a countervailing force is applied pulling the legs away from the hubs 20.**

(JA_9, col. 4, lines 22-33; emphasis added).  Yet, this is merely one example and "an invention is not limited to its examples."  *Netcraft Corp. v. Ebay, Inc.*, 549 F.3d 1394, 1400 (Fed. Cir. 2008).  And, the '993 patent also expressly states:

> Although certain example methods and apparatus have been described herein, the scope of coverage of this patent is not limited thereto. On the contrary, this patent covers all methods, apparatus and articles of manufacture fairly falling within the scope of the appended claims either literally or under the doctrine of equivalents.

(JA_11, Col. 7, lines 41-46).

Moreover, the doctrine of claim differentiation refutes Chicco's argument regarding this limitation. *Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would

make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant."). That is because each claim has a purpose that is separate and distinct from the remaining claims. *Pall Corp. v. Micron Separations,* 66 F.3d 1211, 1220 (Fed. Cir. 1995). Here, claim 30 of the '993 patent depends from independent claim 28 and adds the limitation at issue here: "moving the leg of the play gym toward the hub to secure the leg in the stored position." Claim 29, which also depends from independent claim 28, adds the limitation of "wherein pulling the leg of the play gym comprises pulling the leg of the play gym against a spring force." While claim 29 specifically requires a spring force, claim 30 – the claim in which the limitation at issue appears – does not. As such, claim 30 should not be construed to require that "the leg is substantially fixed or immoveable without the application of a countervailing force to remove it from the stored position" as Chicco requests.

Kolcraft contends that no construction of this phrase is necessary. The phrase "moving the leg of the play gym toward the hub to secure the leg in a stored position" should be given its plain and ordinary meaning as understood by a person of ordinary skill in the art.

**V.    CONCLUSION**

For the reasons stated, it is respectfully requested that the Court adopt Kolcraft's construction of the disputed claim terms.

Respectfully submitted,

_____/s/ Raymond P. Niro, Jr._____
Raymond P. Niro, Jr.
Dina M. Hayes
Laura A. Kenneally
Olivia T. Luk
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137
RNiroJr@nshn.com; Hayes@nshn.com;

LKenneally@nshn.com; OLuk@nshn.com

Attorneys for Plaintiff,
Kolcraft Enterprises, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 11, 2012 the foregoing

**PLAINTIFF'S CLAIM CONSTRUCTION RESPONSE**
**REDACTED PUBLIC VERSION**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

*Attorneys for Defendant*

James K. Borcia
Tressler LLP
Sears Tower - 22nd Floor
233 S. Wacker Drive
Chicago, Illinois 60606
jborcia@tsmp.com

Anthony S. Volpe
Ryan W. O'Donnell
Kristine L. Butler
Volpe and Koenig, P.C.
United Plaza, Suite 1600
30 S. 17th Street
Philadelphia, PA 19103
AVolpe@volpe-koenig.com
RODonnell@volpe-koenig.com
kbutler@volpe-koenig.com

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

      /s/ Raymond P. Niro, Jr.
Attorneys for Plaintiff
NIRO, HALLER & NIRO