JKB/cic/561640             9023-1-51

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KOLCRAFT ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 CV03339 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| CHICCO USA, INC., | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S CLAIM CONSTRUCTION RESPONSE**

**TABLE OF CONTENTS**

I. PROCEDURE FOR *MARKMAN* HEARING ............................................................................ 1

II. INTRODUCTION ................................................................................................................ 1

III. KOLCRAFT'S RELIANCE ON THE ACCUSED PLAY YARD IS MISPLACED AND SHOULD NOT BE CONSIDERED IN THIS COURT'S CLAIM CONSTRUCTION ............................................................................................................... 1

IV. RESPONSE TO KOLCRAFT'S POSITIONS ON CLAIM CONSTRUCTION .................... 2

    A. The Steps Of Method Claim 28 Must Be Performed In A Particular Order ........... 2

    B. Claim 28's Step (1): "securing a play gym at least partially above at least one of a bassinet and a play yard …" ................................................................. 3

    C. Claim 28's Step (3): "securing the play gym to a mat apart from the play gym and the bassinet" ............................................................................................ 5

        1. The Nonsensical Language in Step (3) Of Claim 28 Is Subject To Debate ................................................................................................ 6

        2. The Step (3) Language In Issued Claim 28 Was Specifically Addressed During Prosecution Of The '993 Patent ................................ 7

        3. Kolcraft's Case Citations Do Not Support The Requested Change ........... 8

        4. Mr. Myers' Post-Issuance Intent Is Not Entitled To Any Weight ............. 9

    D. Claim 28's Step (5): "pivoting the leg into a stored position." ............................ 10

        1. Kolcraft's Attempt To Construe The Term "Pivoting" In A Non-Conventional Manner Requires Construction Of This Disputed Term ....................................................................................................... 10

        2. The Myers Declaration Should Be Stricken From The Record And Kolcraft's Argument In Reliance On The Myers Declaration Should Be Disregarded ............................................................................ 13

V. CONCLUSION .................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    **Page**

*Abbott Labs. v. Church & Dwight Co.*,
    No. 07-cv-3428, 2008 U.S. Dist. LEXIS 103635 (N.D. Ill. Dec. 22, 2008) ............................1

*Biogen, Inc. v. Berlex Labs.*,
    318 F.3d 1132 (Fed. Cir. 2003)................................................................................................9

*Chef America, Inc. v. Lamb-Weston, Inc.*,
    358 F.3d 1371 (Fed. Cir. 2004) ...............................................................................................6

*Ductcap Prods. v. J&S Fabrication Inc.*,
    2012 U.S. Dist. LEXIS 23501 (E.D. Wis. Feb. 24, 2012) ........................................................9

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
    849 F.2d 1430 (Fed. Cir. 1988)................................................................................................5

*Frazier v. Map Oil Tools, Inc.*,
    725 F. Supp. 2d 597 (S.D. Tex. 2010) .....................................................................................6

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
    78 F.3d 1575 (Fed. Cir. 1996)..................................................................................................9

*Hoffer v. Microsoft Corp.*,
    405 F.3d 1326 (Fed. Cir. 2005)................................................................................................8

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
    540 F.3d 1337 (Fed. Cir. 2008)................................................................................................9

*Itex, Inc. v. Mount Vernon Mills, Inc.*,
    No. 08-C-1224, 2011 U.S. Dist. LEXIS 65134 (N.D. Ill. June 20, 2011) (J. Pallmeyer) ........6

*Lemelson v. Gen. Mills, Inc.*,
    968 F.2d 1202 (Fed. Cir. 1992)............................................................................................8,9

*Lucent Technologies, Inc., v. Gateway, Inc.*,
    525 F.3d 1200 (Fed. Cir. 2008)................................................................................................6

*Method Elecs., Inc. v. DPH-DAS, LLC,*
    2011 U.S. Dist. LEXIS 1542903 (E.D. Mich. Sept. 12, 2011) ................................................9

*NeoMagic Corp. v. Trident Microsystems, Inc.*,
    287 F.3d 1062 (Fed. Cir. 2002)...........................................................................................1,2

*Novo Indus., L.P. v. Micro Molds Corp,*
  350 F.3d 1348 (Fed. Cir. 2003)......................................................................................................8

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
  775 F.2d 1107 (Fed. Cir. 1985) .....................................................................................................2

*Teknowledge Corp. v. Akamai Technologies, Inc.*,
  No. C 02-05741, 2004 U.S. Dist. LEXIS 18779 (N.D. Cal. Sept. 11, 2004) ............................6

*Wilson Sporting Goods, Co. v. Hellerich & Bradsby Co.,*
  442 F.3d 1322 (Fed. Cir. 2006)...................................................................................................1,2

**Statutes**

35 U.S.C. § 112...................................................................................................................................5

37 C.F.R. § 1.56................................................................................................................................13

**I.      PROCEDURE FOR *MARKMAN* HEARING**

Pursuant to the Court's December 5, 2012 Order [*Dkt. No. 149*], Defendant, Artsana USA, Inc. ("Artsana") hereby requests an in-court *Markman* hearing. Artsana agrees with Plaintiff Kolcraft Enterprises, Inc. ("Kolcraft") that attorney argument should be sufficient and that the hearing should take no more than two hours.

**II.     INTRODUCTION**

It is well settled that the "purpose of claim construction is to define a term, not to compare the term to the characteristics of an accused method or device." *Abbott Labs. v. Church & Dwight Co.*, No. 07-cv-3428, 2008 U.S. Dist. LEXIS 103635, *25 (N.D. Ill. Dec. 22, 2008) (*citing NeoMagic Corp. v. Trident Microsystems, Inc.,* 287 F.3d 1062, 1074 (Fed. Cir. 2002)). Kolcraft's Claim Contruction Response [*Dkt. No. 150*] ("Kolcraft's Response") improperly focuses on comparing claim 28 of U.S. Patent No. 7,376,993 ("'993 Patent") to Artsana's accused play yard in an effort to divert attention from claim 28's admitted flaws that render it not amenable to construction. The flawed language in claim 28 of the '993 Patent cannot be corrected now to suit Kolcraft's needs in this infringement litigation.

**III.    KOLCRAFT'S RELIANCE ON THE ACCUSED PLAY YARD IS MISPLACED AND SHOULD NOT BE CONSIDERED IN THIS COURT'S CLAIM CONSTRUCTION**

Kolcraft's Response improperly relies on testimony concerning Artsana's accused play yard for Kolcraft's alleged position on the proper claim construction of the disputed claim terms of the '993 Patent. Contrary to Kolcraft's assertions, consideration of an accused product is limited to contextual purposes in claim construction. *Wilson Sporting Goods, Co. v. Hellerich & Bradsby Co.,* 442 F.3d 1322, 1326-27 (Fed. Cir. 2006). It is well settled that "[a] court may <u>not</u> use the accused product or process as a form of extrinsic evidence to supply limitations for patent

1

claim language." *Id.* at 1331; *see also NeoMagic*, 287 F.3d at 1074; *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc)).

Kolcraft's reliance on Mr. Messner's Deposition testimony (Kolcraft's Response at pgs. 10, 18, 22), Ms. Manzella's Declaration (pgs. 10-11, 18, 22, 23), and the accused play yard (pgs. 18-19) is misplaced and must not be considered in this Court's claim construction.

IV. **RESPONSE TO KOLCRAFT'S POSITIONS ON CLAIM CONSTRUCTION**

    A. **The Steps Of Method Claim 28 Must Be Performed In A Particular Order**

Kolcraft's Response does not dispute that the "securing" steps of method claim 28 must occur sequentially before the "removing" steps, and that the "collapsing" step must occur after one of the "removing" steps. However, Kolcraft alleges that the steps (1)-(2) or steps (3)-(4) can be performed in any order. Kolcraft's Response at p. 5. Claim 28 is reproduced below with numbers inserted for ease of reference.

    (1)    securing a play gym at least partially above at least one of a bassinet and a play yard;

    (2)    removing the play gym from the at least one of the bassinet and the play yard;

    (3)    securing the play gym to a mat apart from the play gym and the bassinet;

    (4)    removing the play gym from the mat; and

    (5)    collapsing the play gym, wherein collapsing the play gym comprises: pulling a leg of the play gym in a direction away from a hub; and pivoting the leg into a stored position.

Artsana submits that the plain language of claim 28 and common sense require steps (1)-(5) be performed sequentially. In the context of the entire claim 28, step (3), "securing the play gym to a mat <u>apart</u> from the play gym and the bassinet," requires the step (2) removal of the play gym from the bassinet or play yard to be completed prior to step (3)'s securing "to a mat apart

2

from the play gym and the bassinet."[1] The proper construction of claim 28 requires that steps (1)-(5) be performed in the particularly recited sequential order.

      **B.    Claim 28's Step (1): "securing a play gym at least partially above at least one of a bassinet and a play yard …"**

Kolcraft's assertion that step (1) of claim 28 does not require construction is wide of the mark. Kolcraft's Response at pp. 7-8. Artsana's Opening Brief did not offer a construction for this phrase because this phrase omits an essential element that renders it broader than the invention described in the '993 Patent specification. *See* Declaration of Jerry Drobinski ("Drobinski Declaration") at ¶ 11 (Exhibit "A" hereto).

Kolcraft's attempt to argue that "close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee" is an apparent acknowledgment the language of claim 28 is flawed. Kolcraft's Response at p. 8. Unfortunately for Kolcraft, this is not a close question as to whether this claim overreaches the scope of the alleged "invention" described in the '993 Patent specification. Kolcraft admits that a "key feature" of the alleged "invention" is the ability to use the play gym with the play yard, bassinet, or floor mat. Kolcraft's Response at p. 6. The '993 Patent emphasizes that this is only accomplished by designing the play gym to be connectable to the play yard, bassinet, or floor mat. Each of the '993 Patent specification passages cited by Kolcraft emphasize that the play gym is <u>connected to</u> the bassinet or play yard, stating:

- "These forces act to bias the hub 20 upward away from the bassinet 12 and/or the play yard 14 and to bias <u>the free ends of the legs 22 into tight engagement with the side of the pockets 35, 50</u> .. to thereby securely hold the play gym 10 above the bassinet 12 and/or the play yard 14." (Kolcraft's Response at p. 9, citing JA-10, col. 5, ll. 26-38);

- "The user may then secure the play gym 10 at least partially above one or both of the bassinet 12 and the play yard 14 by, for example, <u>inserting the feet 68 of the</u>

---

[1] As set forth in Section IV.C., step (3) of claim 28 is nonsensical and not amenable to claim construction.

> legs 22 into the connectors 50 of the bassinet 12 and/or play yard or into the connectors of the mat 16." (*Id.*, citing JA-11, col. 7, ll. 1-9); and

- "To removably couple the play gym 10 to at least one of the bassinet 12 and the play yard 14, at least one of the mat 16, the bassinet 12 and the play yard 14 is provided with connectors 50." (*Id.*, citing JA-10, col. 5, ll. 4-15).

Kolcraft mistakenly relies on the Declaration of Peter J. Myers ("Myers Declaration") for its assertion that the "the co-inventor of the '993 patent clearly understood the securing step in claim 28 as would anyone of skill in the art (Exhibit 1, Myers Decl., ¶ 8)." Kolcraft's Response at pp. 10-11. The Myers Declaration is devoid of any facts to support Kolcraft's conclusory statement that "securing a play gym at least partially above at least one of a bassinet and a play yard" is easily understood by one of ordinary skill in the art.

Despite its failure to save claim 28, the Myers Declaration demonstrates the missing essential element of a specific structure for "securing" the play gym. Myers Decl. at ¶ 8 ("…the play gym in the '993 patent could be secured by snaps, sleeves, Velcro, friction fit or any other number of ways.") However, the Myers Declaration never points to the identification of any structure in claim 28 for "securing" the play gym to the bassinet or play yard.

Kolcraft's Response admits that "[t]he context of surrounding words in the claim must also be considered in determining the ordinary and customary meaning of a disputed term." Kolcraft's Response at p. 2. The surrounding words of claim 28 further support the finding that the "securing" step (1) of claim 28 is missing an essential element. Step (2) of claim 28, "removing the play gym from the at least one of the bassinet and the play yard," implies that the play gym is first connected to a specific, but un-recited, structure in step (1) in order to remove it in step (2). In addition, step (3) of claim 28, "securing the play gym to a mat apart from the play gym and the bassinet," is further evidence that the patentee knowingly understood the difference

4

between the phrase "securing … to" in step (3) and the phrase "securing … above" in step (1), and made the deliberate choice to use the different phrases.

Because claim 28 omits the essential element of securing the play gym <u>to</u> the bassinet or play yard, it is broader than the invention described in the '993 Patent, and lacks the required written description pursuant to 35 U.S.C. § 112, first paragraph.

### C. Claim 28's Step (3): "securing the play gym to a mat apart from the play gym and the bassinet"

Kolcraft admits that the claim 28 phrase, "securing the play gym to a mat apart from the play gym and the bassinet" is nonsensical stating, "[t]he claim language as written requires something impossible – securing a play gym to a mat apart from itself." Kolcraft's Response at pg. 13. Kolcraft is asking this Court to ignore its chosen claim language and replace it with its newly preferred, after-the-fact language. The purpose of claim construction is to define the terms and "courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth." *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988). Claim 28's nonsensical phrase cannot be re-written post-issuance under the guise of claim construction.

Kolcraft was required to distinctly claim its invention as part of its bargain with the USPTO. In the 4½ years since the '993 Patent issued, Kolcraft did not seek a re-issue, did not make the correction in the pending reexamination proceeding, and did not request a USPTO certificate of correction. It is improper for Kolcraft to ask this Court to amend claim 28 and permit Kolcraft to seek past damages based on an admittedly nonsensical claim.

It is well established that courts should not redraft patent claims to avoid a nonsensical result. The Federal Circuit emphasized this rule and stated that district courts "may not redraft claims to cure a drafting error made by the patentee, whether to make them operable or to sustain

5

their validity." *Lucent Technologies, Inc., v. Gateway, Inc.*, 525 F.3d 1200, 1215 (Fed. Cir. 2008). This District followed this basic rule in *Itex, Inc. v. Mount Vernon Mills, Inc.*, wherein in construing the term "cotton fabrics," the court cited *Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004) and adopted the plain meaning of the term, stating, "however appealing it might be to do so, controlling Federal Circuit law expressly prohibits a court from rewriting patent claims." No. 08-C-1224, 2011 U.S. Dist. LEXIS 65134, *17 (N.D. Ill. June 20, 2011) (J. Pallmeyer).

Other district courts faced with similar claim construction issues have refused to re-write claim language, instead using the original claim language as a basis for non-infringement and invalidity rulings. *See Frazier v. Map Oil Tools, Inc.*, 725 F. Supp.2d 597 (S.D. Tex. 2010); and *Teknowledge Corp. v. Akamai Technologies, Inc.*, No. C 02-05741, 2004 U.S. Dist. LEXIS 18779, *14-17 (N.D. Cal. Sept. 11, 2004). The district court in *Teknowledge* refused to adopt the patent holder's proposed claim construction and held that the patent was invalid and not infringed based on its nonsensical claim language, and the court stated, "[i]t is the job of the patentee, and not the court, to write patents carefully and consistently. The court cannot re-write the patent". *Id.* at *23-24 (quoting *Chef America*, 358 F.3d at 1373).[2]

Kolcraft's arguments do not justify any exemption from the Federal Circuit's precedent.

### 1. The Nonsensical Language in Step (3) Of Claim 28 Is Subject To Debate

Kolcraft mistakenly argues that the requested correction is not subject to reasonable debate. The '993 Patent specification and drawings disclose that the "play gym" can be secured

---

[2] Much like the elements "play gym" and "play yard" at issue in claim 28 of the '993 Patent, in *Teknowledge* the patent's claim confused two claim elements, "server" and "clients." The Teknowledge patent, as drafted, included the phrase "objects fetched from said clients," which made no sense. The phrase would have made sense if the patent had claimed "objects fetched from said <u>server</u>" or "objects fetched <u>for</u> said clients." But as drafted, the phrase "objects fetched from said clients" was nonsensical.

to a bassinet, to a play yard, and to a stand alone mat (JA-000001-12; Figs. 1 and 2, col. 5, ll. 4-38 and 54-64). It is logical and possible that the phrase "securing the play gym to a mat apart from the <u>play gym</u> and the bassinet," distinguishes the "mat" as a separate part from the play gym and the bassinet (*i.e.*, "securing the play gym to a mat ~~apart~~ <u>that is a separate part</u> from the play gym and the bassinet.") Drobinski Decl. at ¶ 13. It is also logical and possible that the phrase "securing the play gym to a mat apart from the <u>play gym</u> and the bassinet," distinguishes the mode in which the play gym is secured to a mat "apart" from the mode in which the play gym is secured to the bassinet. *Id*. Because the patentee's chosen language for step (3) of claim 28 is admittedly not clear, it is impossible to know what element this phrase refers to. Claim construction during the course of litigation is not the proper vehicle to resolve this uncertainty.

### 2. The Step (3) Language In Issued Claim 28 Was Specifically Addressed During Prosecution Of The '993 Patent

Kolcraft incorrectly states that the prosecution history of U.S. Patent Application No. 10/725,071 ("'071 Application") does not suggest a different interpretation than its requested correction. Kolcraft's Response at pg. 14. Issued claim 28 of the '993 Patent is a combination of originally filed claims 36, 38, and 39 in the '071 Application.[3]

The USPTO Examiner's rejection of claims 36-38 focused on original claim 36, stating:

Claims 36-38 are rejected under 35 U.S.C. 102(b) as being anticipated by 4,188,745 to Harvey et al.

Claim 36, Harvey discloses a method comprising:
securing a play gym 10 to a play yard (col. 3 lines 14-17);

---

[3] Originally filed claims 36, 38, and 39 of the '071 Application recited (*see* JA 000344-345):

36. A method comprising: securing a play gym at least partially above at least one of a bassinet and a play yard; removing the play gym from the at least one of the bassinet and the play yard; and **securing the play gym to a mat apart from the play gym and the bassinet**.

38. A method as defined in claim 36 further comprising: removing the play gym from the mat; and collapsing the play gym.39.   A method as defined in claim 38 wherein collapsing the play gym comprises: pulling a leg of the play gym in a direction away from a hub; and pivoting the leg into a stored position.

7

> removing the play gym from the the play yard; and
> **securing the play gym to a mat defined by a base 34 apart from the <u>play gym</u>**.

JA-000171-173 (emphasis added). In response, Kolcraft amended claim 39 to incorporate the subject matter of originally filed claims 36 and 38, and specifically included the limitation, "securing the play gym to a mat apart from the <u>play gym</u>." JA-000150-159 (emphasis added). The USPTO Examiner then allowed claim 39, but maintained the rejection of claim 36 which still recited the original language. JA-000136-138. Following another rejection (JA-000049-000051), Kolcraft subsequently cancelled rejected claim 36 (JA000031-041).

Because issued claim 28 is admittedly nonsensical, it is not a minor error that can be corrected by the Court more than four years after the '993 Patent's issuance. *Novo Indus., L.P. v. Micro Molds Corp,* 350 F.3d 1348, 1356-57 (Fed. Cir. 2003) (stating that it is beyond the district court's authority to make sense out of a nonsensical claim phrase where the USPTO Examiner specifically considered this phrase in evaluating patentability.)

### 3. Kolcraft's Case Citations Do Not Support The Requested Change

Kolcraft's attempt to distinguish Artsana's cases is wide of the mark and Kolcraft's cited cases do not support its position. As a first matter, Kolcraft incorrectly paraphrases Artsana's reliance on *Novo*. Kolcraft's Response at pp. 14-15. Artsana's Opening Brief cited *Novo* stating, "[a]fter the enactment of sections 254 and 255, we have assumed that courts can continue to correct obvious minor typographical and clerical errors in patents. …. At the same time, we have assumed that major errors are subject only to correction by the PTO." *Novo*, 350 F.3d at 1357.

The cases advanced by Kolcraft actually are consistent with the *Novo* rule that courts may only correct minor errors. In *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005), the Federal Circuit allowed judicial correction where a claim depended from a claim that did not exist as a result of an obvious USPTO error. In *Lemelson v. Gen. Mills, Inc.*, 968 F.2d 1202,

8

1203, n.3 (Fed. Cir. 1992), the Federal Circuit allowed judicial claim correction because "the deletion of 'toy' appears from the record of the proceedings before the PTO to have been an inadvertent [printing] error …." In *Method Elecs., Inc. v. DPH-DAS, LLC,* 2011 U.S. Dist. LEXIS 1542903 at *13-17 (E.D. Mich. Sept. 12, 2011), the court corrected the term "silicon" to "silico*n*e" as an obvious error since the specification did not use the term "silicon." In *Ductcap Prods. v. J&S Fabrication Inc.*, 2012 U.S. Dist. LEXIS 23501, *8-9 (E.D. Wis. Feb. 24, 2012), the district court added an "e" to the claimed word "envelop" to correct an obvious misspelling.

Each of these cases is consistent with *Novo* and reinforces the rule that where a patentee, such as Kolcraft, seeks to correct more than a minor typographical or clerical error, that request exceeds a court's authority under *Novo*.

### 4. Mr. Myers' Post-Issuance Intent Is Not Entitled To Any Weight

The Myers Declaration is not entitled to any weight and Kolcraft's reliance on it in support of its request for judicial correction is misplaced. In particular, Kolcraft's Response states:

> … the co-inventor of the '993 patent even acknowledged the typo in this limitation and stated that this phrase was intended to say "securing the play gym to a mat apart from the play yard and bassinet.

Kolcraft's Response at p. 14. It is well settled that the inventor's subjective intent is entitled to no probative weight in determining the scope of a claim. *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008) ("The testimony of an inventor cannot be relied on to change the meaning of the claims."); *Hoechst Celanese Corp. v. BP Chems. Ltd.,* 78 F.3d 1575, 1580 (Fed. Cir. 1996) ("*Markman* requires us to give no deference to the testimony of the inventor about the meaning of the claims."); *Biogen, Inc. v. Berlex Labs.*, 318 F.3d 1132, 1139-40 (Fed. Cir. 2003) (subjective intent of the inventor has no bearing on the claim scope).

9

Mr. Myers' post-issuance statements regarding the intent of the language used in step (3) of claim 28 should not be given any weight for the purpose of claim construction.

Kolcraft's requested amendment to claim 28 is not to correct a minor error. The issued language of step (3) of claim 28 was the focus of multiple exchanges between the patentee and the USPTO Examiner. In the 4½ years since the '993 Patent issued, Kolcraft had ample opportunity to review the claim language for errors. In all of that time, Kolcraft did not seek a re-issue, did not make the correction in the pending reexamination proceeding, and did not request a USPTO certificate of correction. Kolcraft's belated effort to argue the inventor's intent is contrary to the record and the Myers Declaration should be stricken.

**D.     Claim 28's Step (5): "pivoting the leg into a stored position."**

**1.     Kolcraft's Attempt To Construe The Term "Pivoting" In A Non-Conventional Manner Requires Construction Of This Disputed Term**

Kolcraft asserts that the claim 28 phrase, "pivoting the leg into a stored position," should be given its plain and ordinary meaning. Kolcraft's Response at p. 20. However, Kolcraft called the meaning of this term into dispute by its unconventional application of this phrase to allegedly cover Artsana's redesigned play gym as set forth in its Final Infringement Contentions:

10



Based on Kolcraft's tortured application of the claim 28 term "pivoting," it is evident that the meaning of "pivoting" is a disputed term that requires construction.[4]

Artsana's proposed construction of the term "pivoting" is based on the commonly accepted meaning of this term as well as the manner in which the patentee described "pivoting" in the '993 Patent specification and drawings. *See* Artsana's Opening Brief at pp. 18-21. The attached Declaration of Jerry Drobinski, further establishes that one of ordinary skill in the art construes the claim 28 term "pivoting" as requiring the leg to be connected to a fixed member, the "pivot," and turned or rotated about that fixed pivot to a stored position. Drobinski Decl. at ¶ 15.

Kolcraft cites to the '993 Patent specification, at col. 4, ll. 11-15, for its argument that "the legs 22 may be coupled to the hub 20 in any number of ways" (Kolcraft's Response at p. 21), but, not surprisingly, Kolcraft omits the '993 Patent specification's preceding paragraph that

---

[4] Artsana agrees with Kolcraft that the phrase "stored position" in claims 28 and 30 should be construed to "require that the legs are positioned generally parallel to each other as shown in Fig. 4 … ." Kolcraft's Response at p. 23.

11

"pivotably coupling" the legs to the hub is one exemplary way of coupling the legs to the hub. JA-000009, col. 4, ll. 5-15. Because claim 28 of the '993 Patent expressly requires collapsing the hub by "pivoting the leg into a stored position," this phrase must be construed in the context of the "pivotal coupling" provided in the '993 Patent specification and cannot be construed to encompass non-pivotal couplings.

Kolcraft's assertion that Artsana's position that this phrase "'cannot be construed to include a detachable socket connection or a tethered connection between the play gym's legs and the hub' …deviates from the plain language of claim 28… " (Kolcraft's Response at p. 21), was rejected by the '993 Patent's inventor, Peter J. Myers, who agreed that "a male/female connection where the post is plugged into a hole is not a pivotable connection." During his deposition, Mr. Myers reviewed prior art cited during prosecution of the '993 Patent. With reference to the cited reference U.S. Patent No. 5,930,854 and Figure 4 (reproduced below), Mr. Myers testified:

| Q. Based on your experience in the industry, the juvenile products industry, do you consider the connection between connector 20 and the tubular strut 26 shown in Figures 3 and 4 to be a pivotable connection?<br><br>A. Based on a brief overview, I don't see any description relative to a pivotable connection. I just see a discussion where it talks about connecting it together.<br><br>Q. Based on your review of the patent, what kind of connection do you consider this to be?<br><br>A. I consider it a male/female connection where the post is just plugged into a hole. | **U.S. Patent No. 5,930,854**<br> |

Myers Dep. Trans. at pp. 178, ll. 24 – pg. 179, ll. 18 (objections omitted) (Exhibit "B" hereto).

Mr. Myers' testimony supports Artsana's position that the claim 28 phrase, "pivoting the leg into a stored position," cannot be construed to include a detachable socket connection or a tethered connection between the play gym's legs and the hub.

### 2. The Myers Declaration Should Be Stricken From The Record And Kolcraft's Argument In Reliance On The Myers Declaration Should Be Disregarded

As set forth earlier, it is also well settled the subjective intent of the inventor is entitled to no weight in determining the scope of a claim and Kolcraft's reliance on the Myers Declaration is misplaced. The Myers Declaration states:

> It was not intended for the phrase "pivoting a leg into a stored position" of claim 28 to be limited to turning or rotating the leg about a shaft or pin. Indeed, there are many ways to couple the legs to the hub and pivot the legs that do not necessarily require a pin or shaft.

Myers Declaration at ¶ 9. Neither the '993 Patent specification nor the Myers Declaration describe any of "the many ways to couple the legs to the hub and pivot the legs" without a pin or shaft. Mr. Myers' after-the-fact attempt to craft language broad enough to support Kolcraft's infringement position provides no guidance as to how the term "pivoting" should be construed.

As to Mr. Myers' qualification to opine on the issue, Mr. Myers' deposition testimony is clear that he is not qualified to opine on the issue of "pivoting." During prosecution of the '993 Patent in the USPTO, Kolcraft cited Chinese Patent No. 2,650,639 (JA-000105-118) to the USPTO as prior art that is "material to patentability" pursuant to 37 C.F.R. § 1.56. JA-000088-91. At his deposition, Mr. Myers was asked to review the English translation of this Chinese Patent and state if it disclosed legs that could pivot. That exchange, reproduced below, focused on Figures 4 and 5 of the Chinese Patent:

>     Q    … After reading the English translation of Chinese Patent No. 2,650,639, and in particular the description on Page 7229, CHI 0007229, do you believe that the structure shown in Figure 5 on Page KOL00183 shows legs that can pivot?
>
>     A.   It looks like a hub with legs that fold in, but I can't really say if they're pivoting.
>
>     Q.   After reviewing the description, does that help you?
>
>     A.   Same answer. I can't draw a conclusion on that.

Exhibit "B" at p. 197, ll. 3-23 (objections removed).

The below comparison of Figures 4-5 of Chinese Patent No. 2,650,639 with Figures 7-9 of the '993 Patent illustrates the similarity between the two play gym structures.



14

Despite having nearly identical structures, Mr. Myers was unable to answer the simple question of whether Chinese Patent No. 2,650,639 "shows legs that can pivot." Based on his inability to determine if a nearly identical play gym has legs that can pivot, it is respectfully submitted that Mr. Myers is not qualified to opine on the meaning of the term "pivoting."

The subjective intent of the inventor is entitled to no weight and Mr. Myers' demonstrated inability to evaluate a similar structure requires that the Myers Declaration be stricken.

## V. CONCLUSION

For the reasons set forth in Artsana's Opening Brief and this Reply Brief, Artsana respectfully submits that claim 28 of the '993 Patent is not amenable to claim construction. To the extent that construction of the disputed terms of the '993 Patent is required, Artsana respectfully requests that the Court adopt the proposed constructions set forth in Artsana's Opening Brief.

                                            Respectfully submitted,

                                            ARTSANA USA, INC.

                                            By: /s/James K. Borcia
                                                  One of Its Attorneys

James K. Borcia
TRESSLER LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606-6399
(312) 627-4000
Fax: (312) 627-4000
jborcia@tresslerllp.com

Anthony S. Volpe
Ryan W. O'Donnell
VOLPE AND KOENIG, P.C.
United Plaza, 30 S. 17th Street
Philadelphia, PA 19103
(215) 568-6400

## CERTIFICATE OF SERVICE

I herby certify that a true and correct copy of **Defendant's Reply To Plaintiff's Claim Contruction Response** is being served via the Court's ECF notification system and e-mail on the following persons:

>Raymond P. Niro, Jr., Esquire
>Dina M. Hayes, Esquire
>Laura A. Kenneally, Esquire
>Niro, Haller & Niro
>181 West Madison, Suite 4600
>Chicago, IL 60602

Date: January 3, 2013  By: s/James K. Borcia
>James K. Borcia
>TRESSLER LLP
>233 South Wacker Drive, 22nd Floor
>Chicago, IL 60606-6399
>(312) 627-4000
>Fax: (312) 627-4000
>jborcia@tresslerllp.com
>
>Ryan W. O'Donnell (PA 89,775)
>Volpe and Koenig, P.C.
>United Plaza, Suite 1600
>30 South 17th Street
>Philadelphia, PA 19103
>Telephone: (215) 568-6400
>AVolpe@volpe-koenig.com
>RODonnell@volpe-koenig.com

2175404-1