IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOLCRAFT ENTERPRISES, INC., ) | |
| ) | |
| Plaintiff, ) | Case No. 1:09-cv-03339 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| CHICCO USA, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO STAY PENDING *EX PARTE* REEXAMINATION**

Defendant, Artsana USA, Inc. ("Artsana"), by and through its attorneys, hereby submits this Reply in response to Plaintiff, Kolcraft Enterprises, Inc.'s Opposition to Defendant's Motion to Stay (*Dkt. No. 294*) ("Opposition Brief").

## I.  INTRODUCTION

This Reply addresses: (1) Kolcraft's misrepresentations regarding the outcome of the prior *inter partes* reexamination proceeding; (2) Kolcraft's misconceptions on the chances of the present *ex parte* reexamination succeeding; (3) Kolcraft's assertion that the relief requested by Artsana is "unprecedented;" (4) the USPTO's expeditious treatment of the present *ex parte* reexamination proceeding; and (5) Kolcraft's counsel's violation of Rule 408 of the Federal Rules of Evidence by relying on Artsana's settlement offer as an admission regarding its invalidity positions.

## II.  RESPONSIVE ARGUMENT

### A.  Kolcraft Misrepresents the Outcome of the Prior *Inter Partes* Reexamination

Kolcraft's characterization of Artsana's prior *inter partes* reexamination ("IPRex") as a "failed attempt" is unsupported by the facts and the outcome of the prior IPRex. Further, the

result of the prior IPRex supports a stay of the present *ex parte* reexamination ("EPR"). Following Kolcraft's Complaint alleging that Artsana infringes "at least claims 1-12 and 18-21 of the '993 patent," Complaint at ¶ 9 (*Dkt. No. 1*), Artsana filed the IPRex with the USPTO. Ex. C (*Dkt. No. 292-3*).[1]

The rejection of claims 1-27 in the IPRex resulted in Kolcraft making significant amendments to original claims 1-19, 21, and 24-26 of the '993 Patent and cancelling claims 22, 23, and 27. *See* Inter Reexamination Certificate, Ex. E. Consequently, Kolcraft withdrew its infringement assertions with respect to claims 1-12, 18, 19, and 21 of the '993 Patent. Under any objective view of the facts, Artsana's IPRex succeeded in defeating the majority of Kolcraft's infringement claims.

Most importantly to the present motion, claim 20 was twice rejected in the IPRex and was not allowed until Kolcraft submitted a declaration alleging an earlier date of invention than the prior art used to reject this claim. Ex. G at pgs. 32-33 of 53. Ultimately, Kolcraft was required to amend claim 20 to be in independent form in order to gain its allowance. Ex. E. Although original claims 28-31 of the '993 Patent were confirmed to be patentable in the IPRex, (Ex. F at pg. 19 of 22), the current grounds for their rejection in the EPR was not before the USPTO.

With the exception of claims 20 and 28-31, all of the other original '993 Patent claims (*i.e.*, 1-19 and 21-27) were cancelled or significantly amended as a result of the IPRex. Further, it is noted that with respect to original claims 1-27 of the '993 Patent, which were rejected in the IPRex, only claim 20 survived in its original form. *See* Ex. E. Kolcraft's assertion that the

---

[1] Exhibits A-D were attached to Artsana's Opening Brief. (*Dkt. No. 292*).

current EPR has virtually "no chance of succeeding" (Opposition Brief at pg. 2) in eliminating or substantially changing the scope of the asserted claims is clearly contrary to the IPRex record.

**B.     Kolcraft Misrepresents the Chances of Success in EPR**

Kolcraft's efforts to downplay the chance of claim cancellations or amendments in the EPR is attorney argument unsupported by any data. According to the USPTO's *ex parte* reexamination statistics, there is a 79% chance that the asserted claims will be canceled or changed in reexamination (Ex. H, at pg. 3 of 21):

| 8. Reexam certificate claim analysis: | Owner Requester | 3rd Party Requester | Comm'r Initiate | Overall |
|---|---|---|---|---|
| a. All claims confirmed | 6% | 15% | 0% | 21% |
| b. All calims cancled | 3% | 9% | 0% | 12% |
| c. Claims changed | 21% | 46% | 0% | 67% |

The results of the prior USPTO proceedings on Kolcraft's related U.S. 8,388,501 ("'501 Patent") and 8,764,612 ("'612 Patent") patents directed to the same "invention" as the current '993 Patent are evidence of the substantial impact of such proceedings with similar results as reflected in the above statistics.

In 2013, Kolcraft asserted the '501 Patent in *Kolcraft Enterprises, Inc. v. Artsana USA, Inc.*, Case No. 13-cv-04863 (Judge Ellis). In 2015, Kolcraft asserted the '612 Patent in *Kolcraft Enterprises, Inc. v. Artsana USA, Inc.*, Case No. 14-cv-06561 (Judge Zagel). Artsana challenged the validity of the '501 and '612 Patents in separate USPTO proceedings. With respect to the '501 Patent, Artsana succeeded in having claims 1-5 and 8 cancelled in an *inter partes* review proceeding, and having claims 6, 9, 10, and 12 cancelled in an *ex parte* reexamination proceeding. With respect to the '612 Patent, Artsana succeeded in having all of the claims cancelled in an in*ter partes* review proceeding.

These USPTO proceedings are solid evidence that Kolcraft was not entitled to the original scope of the '993 Patent or the related '501 and '612 Patents. For Kolcraft to scoff at Artsana's chances in the present EPR concerning claims 20 and 28-31 is contrary to the record facts in the USPTO proceedings.

      **C.    There is Substantial Precedent to Stay Litigation At Late Stages When Claims are Under Rejection**

Kolcraft would have the parties and Court expend substantial time and resources litigating the asserted '993 Patent claims while they are currently rejected in the EPR. Artsana's Opening Brief demonstrated that a stay will undoubtedly result in simplification of issues to be tried, will not prejudice Kolcraft as neither of the parties are currently selling any product covered by or accused of infringing the '993 Patent, and Kolcraft seeks only a reasonable royalty on past sales. *Ricoh Co. v. Aeroflex Inc.*, No. 03-cv-04669, 2006 U.S. Dist. LEXIS 93756, *16 (N.D. Cal. 2006) ("Ricoh has indicated that it is not seeking lost profits, but instead is seeking reasonable royalty damages. As a result, the Court finds that a stay would not significantly prejudice Ricoh's potential remedies.").

Kolcraft argues that staying this case would be "unprecedented" at this stage in a litigation. Opposition Brief at pg. 2. As demonstrated in Artsana's Opening Brief (pgs. 6-7) and below, a substantial number of courts have found the benefits of staying litigation pending *ex parte* reexamination even when fact discovery is completed and a trial date is set.

In *Ricoh Co. v. Aeroflex Inc.*, No. 03-cv-04669, 2006 U.S. Dist. LEXIS 93756 (N.D. Cal. Dec. 15, 2006), the defendants sought reexamination of the patent at issue and filed a motion to stay the pending infringement proceedings after the close of discovery, summary judgment motions were filed, and a trial date was set. *Id*. at *10, 24. Within 9 months, the USPTO rejected <u>all</u> claims of the patent at issue in a non-final office action. The court granted the

4

motion to stay, finding the following factors persuasive: 1) the fact that plaintiff was seeking royalty damages; 2) the speed with which the PTO conducts reexamination proceedings; 3) the potential for the reexamination to simplify the issues; and 4) the burdens of preparing for trial (the date already being set) despite the close of discovery. *Id*. at *14-27. With respect to the timing of the stay, the Court set forth a well-reasoned explanation of the advantages of a stay:

> The proximity of the trial date, by itself, does not preclude entry of a stay. *Broadcast Innovation, 2006 U.S. Dist. LEXIS at *27*. It is not uncommon for courts to have granted stays where discovery has been completed, and when a trial date has been scheduled or is forthcoming. *Id.* (citing *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc., 68 U.S.P.Q. 2d 1755, 1757 (E.D. Mich. 2003)*; *see also Perricone v. Unimed Nutritional Servs., 2002 U.S. Dist. LEXIS 17613 (D. Conn. 2002)* … . For every court that yields to completed discovery and a looming trial date, another court finds these dates outweighed by other factors be it the complexity of the suit, the value of PTO expertise, simplification of the issues, lack of hardship to the nonmovant, or the overall burden of duplicitous litigation on the parties and on the court. *Id. at *28*. "Put simply, trial time doesn't always tell the tale." *Id.* (citing *Gould, 705 F.2d at 1342* (order granting motion to stay proceedings five years into litigation and twenty days before scheduled trial date); *Middleton, Inc. v. Minn. Mining & Mfg., 2004 U.S. Dist. LEXIS 16812, at *10* (granting motion to stay proceedings eight years after start of litigation and less than two months before trial); *Loffland Bros.,* 225 U.S.P.Q. at 887 (order granting motion to stay proceedings after significant discovery, rulings on dispositive motions, pretrial conference and setting of initial trial date); *Robert H. Harris Co., 19 U.S.P.Q.2d at 1789* (granting stay despite the fact that case was set for trial in less than a month); *Motson, 2005 U.S. Dist. LEXIS 34067, 2005 WL 3465664 at *2* (granting stay despite discovery being complete and summary judgment decided)

> …Undoubtably the parties have spent considerable time and resources thus far substantial discovery has been conducted and the parties have submitted witness lists and lengthy summary judgment motions. Yet far more time and resources remain to be spent before this matter is concluded. Not only must the Court hear the pending motions for summary judgment, but the parties must also begin to prepare for trial by finalizing deposition designations, preparing witnesses, finalizing jury instructions, drafting and preparing motions in limine, drafting and exchanging witness and exhibit lists, and preparing arguments. Defendants argue that neither the Court nor the parties should expend additional resources when it is uncertain which, if any, of the claims will survive the reexamination process. Given the PTO's initial rejection of each of the relevant claims, the reexamination proceedings may well alter, moot, or resolve the issues set for trial.

*Id*. at * 24-27.

In *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. 11-cv-3397, 2014 U.S. Dist. LEXIS 182809 (C.D. Cal. Dec. 5, 2014), the defendant, SKC, requested *inter partes* reexamination, during which the USPTO rejected all claims of 1 of 3 patents-in-suit in an action closing prosecution. The court granted a subsequent motion to stay even after the parties had completed discovery, attended a claim construction hearing, and briefed motions for summary judgment. *Id*. at *4-12.

In *Middleton, Inc. v. Minn. Mining & Mfg.*, No. 4:03-cv-40493, 2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004), the USPTO granted reexamination but had yet to make any decision to reject the claims. When the stay was granted, discovery was complete, summary judgment were briefed, and a trial date was set. *Id.* at *3. The court granted the motion to stay noting that: 1) despite the fact the case was set for trial and the litigation had been ongoing for 8 years, the PTO's expertise would narrow the issues; 2) even though defendant sought reexamination well after the start of litigation, it did not do so for a dilatory purpose; 3) plaintiff was not actively selling products related to the patent at issue, so increased damages would not result; and 4) reexamination could render moot the issues of infringement (willfulness, damages, inequitable conduct) in addition to the issues of validity. *Id*. at * 14-32.

In *Ohio Willow Wood Co. v. ALPS South Corp.,* No. 2:04-cv-1223, 2008 U.S. Dist. LEXIS 99392 (S.D. Ohio Nov. 21, 2008*),* the court imposed a second stay in the late stages of litigation after the USPTO granted a third reexamination request because defendant had been successful before in reexamination and it was probable that at least some claims involved in the litigation would be cancelled since the *ex parte* reexamination request was granted in light of a substantial new question of patentability. *Id*. at * 8-9.

In *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951 (W.D.N.Y. 1996), the court entered a temporary stay order pending a concurrent *ex parte* reexamination proceeding after fact discovery was complete, expert discovery was nearly complete, and trial was scheduled. The court found the stay appropriate because the reexamination could invalidate the patent, and if it "were to deny the stay and proceed to trial, it is possible that the time, resources, and significant efforts of all those involved … would be wasted." *Id*. at 953.

In *Grayling Indus. v. GPAC, Inc.*, No. 1:89-cv-451, 1991 U.S. Dist. LEXIS 16750 (N.D. Ga. March 25, 1991), the Court granted a stay in the late stages of litigation, post-discovery, after the trial date was set, and a pre-trial order submitted, reasoning that the reexamination could potentially moot the litigation if the patent was found to be invalid or provide guidance in the trial. *Id.* at *6. The Court found the added expense of the stay to be greatly outweighed by the efficiency awarded by the USPTO's determination. *Id.*

As demonstrated above, there are substantial benefits to staying litigation, even if at a late stage, where <u>all</u> of the asserted claims stand rejected in the reexamination.

### D. The USPTO's Expedited Treatment of the EPR Favors a Stay

Kolcraft argues that the current, non-final rejections of claims 20 and 28-31 of the '993 Patent weigh against a stay. Opposition Brief at pg. 5. As noted above, the non-final Office Action issued in the prior IPRex was a strong indicator of how the proceeding concluded. Because the current EPR is "*ex parte*," Kolcraft has control over the timing of the proceeding. The USPTO has committed to act expeditiously with regard to this proceeding pursuant to its statutory mandate under 35 U.S.C. § 304 ("[a]ll reexamination proceedings under this section, including any appeal to the Patent Trial and Appeal Board, will be conducted with special dispatch within the Office.")

The USPTO acted on the January 10, 2018 EPR with its February 20, 2018 Order granting the EPR ("EPR Order"). Ex. C and D (*Dkt. Nos. 292-3, 292-4*). The Order gave Kolcraft a period of two months (*i.e.*, until April 20, 2018) to submit an optional Patent Owner's Statement. The USPTO contacted Kolcraft to inquire whether it would waive its Patent Owner's Statement in order to expedite the proceeding, but Kolcraft refused to waive it. Ex. I. Even though Kolcraft never filed a Patent Owner's Statement, the USPTO still had to wait until after April 20, 2018 to issue its next communication. Within 16 business days, the USPTO issued the May 14, 2018 Office Action rejecting claims 20 and 28-31 of the '993 Patent. Ex. B. Kolcraft's two month period to respond to the Office Action expires on July 14, 2018.

The USPTO is acting expeditiously to complete the EPR. Kolcraft still has the ability to expedite EPR proceeding by filing its response prior to the July 14, 2018 response deadline.

Based on the current rejection of claims 20 and 28-31 of the '993 Patent in the USPTO's EPR proceeding, it does not serve the interest of the Court or the parties to hold a trial beginning July 30, 2018.

### E. Kolcraft's Inclusion of Settlement Discussions as Purported Evidence of the Strength of Kolcraft's Litigation Positions is Improper

Footnote 2 on pg. 2 of Kolcraft's Opposition Brief flies in the face of Fed. R. Evid. 408 and should not be given any consideration. Artsana's settlement offer was recognition of the future expenditures of time and money to proceed with trial preparation and trial and should in no way be considered indicative of the strength of Kolcraft's positions in this litigation or the EPR. It is sufficient to say that Artsana's settlement offer, which was substantially less than Kolcraft's earlier demand, reflected the USPTO's rejection of 20 and 28-31 of the '993 Patent, and was a reasonable effort to avoid future cost.

8

To the extent that the Court even considers Kolcraft's footnote 2, the Court's consideration should recognize the Artsana offered up its projection of future cost for an unknown outcome.

### III. CONCLUSION

For the reasons set forth in Artsana's Opening Brief, a stay is warranted because: (1) claims 20 and 28-31 are currently rejected in the EPR; (2) the past USPTO challenges to the '993 and the related '501 and '612 Patents are strong evidence the EPR is likely to streamline the trial issues, if any; (3) a stay will reduce the litigation burdens on the parties and the court and avoid wasted efforts; (4) a stay will not prejudice Kolcraft as it is only seeking a reasonable royalty on past sales because the parties have not sold any product covered by or accused of infringing the '993 Patent since at least 2016.

WHEREFORE, Defendant, Artsana USA, Inc. respectfully requests the issuance of an order staying this matter pending the outcome of the U.S. Patent and Trademark Office *Ex Parte* Reexamination of U.S. Patent 7,376,993, assigned Reexamination Control No. 90/014,062.

Respectfully submitted,

ARTSANA USA, Inc.

By: /s/ James K. Borcia
One of Its Attorneys

James K. Borcia (jborcia@tresslerllp.com)
TRESSLER LLP
233 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000
Fax: (312) 627-1717

Anthony S. Volpe (AVolpe@vklaw.com)
Ryan W. O'Donnell (RODonnell@vklaw.com)
VOLPE AND KOENIG, P.C.
United Plaza, 30 South 17th Street

9

Philadelphia, PA 19103
(215) 568-6400
Fax: (215) 568-6499

#717332