**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KOLCRAFT ENTERPRISES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 CV03339 |
| | ) | |
| v. | ) | Judge Edmond E. Chang |
| | ) | |
| CHICCO USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant, Artsana USA, Inc. ("Artsana"), by and through its attorneys ,pursuant to Federal Rule of Civil Procedure 50(a), hereby submits this Motion for Judgment as a Matter of Law in its favor and against Plaintiff Kolcraft Enterprises, Inc. ("Kolcraft").

### INTRODUCTION

Kolcraft has now closed its case. Judgment should be entered in Artsana's favor as Kolcraft has failed to make out a prima facie case and no reasonable jury could enter a verdict in its favor.

### ARGUMENT

Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a) (motion for judgment as a matter of law), (b) (renewed motion for judgment as a matter of law). In deciding a Rule 50 motion, the court examines the evidence to determine whether the jury's verdict could reasonably be based on that evidence. *Tart v. Illinois Power Co.,* 366 F.3d 461, 464 (7th Cir. 2004). The court does not make credibility determinations or weigh the evidence. *Waite v. Board of Trustees of Illinois Comm. College Dist. No. 508*, 408 F.3d 339, 343 (7th Cir. 2005).

Kolcraft failed to present sufficient evidence at trial from which a reasonable jury could find in its favor, including but not limited to the following: (1) that Artsana's Accused Products (PTX-7, PTX-8, PTX-9, and DTX-296) infringe claim 20 of U.S. Patent No. 7,376,993 ("the '993 Patent"); (2) that the Accused Products having the Redesigned Hub (PTX-8, PTX-9) infringe claims 28-30 of the '993 Patent; (3) that there is willful infringement of the '993 Patent; and (4) Kolcraft is entitled to damages with respect to method claims 28-31. Artsana adopts and incorporates its motion for summary judgment and statement of facts related thereto as if fully set forth.

Kolcraft has the burden of proving infringement by a preponderance of the evidence. *Spectrum Pharm. v. Sandoz*, 802 F.3d 1326, 1336 (Fed. Cir. 2015). Kolcraft's burden of proof never shifts to Artsana. *Tech. Licensing Corp. v. Videotek,* 545 F.3d 1316, 1327 (Fed. Cir. 2008). If Kolcraft fails to prove that every element of an asserted claim has been met, then Kolcraft fails to prove that the allegedly infringing product literally infringes that patent claim. *Cephalon v. Watson Pharm.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013). Kolcraft has not present ed legally sufficient evidence from which a reasonable jury could find literal infringement of any of the asserted claims of the '993 patent.

Artsana's Accused Products underwent multiple design changes after Artsana was notified about the '993 Patent. The Accused Products, each of which includes a playard, a bassinet insert, a changing table, and a play gym made up of a hub and four legs, can be grouped as (1) "Original Design" (PTX-7) (2) "First Redesign" (DTX-296); (3) "Second Redesign" (PTX-8) and (4) "Third Redesign" (PTX-9.) In the "Original Design" one end of the leg is attached to a hub cavity via a securing pin and the other end had a snap connector that mates with a snap connector within a fabric pocket stitched to the top of the floor mat. The "First

Redesign" removed the fabric pockets, replaced the mated snap connectors with hook and loop fasteners, and provided D-rings attached to fabric straps on the underside of the floor mat to receive the hook and loop fasteners. See the testimony of Peter J. Myers. The "Second Redesign" eliminated the securing pins in the hub cavity (the "Redesigned Hub"), and connected fabric sleeves encasing the legs to the hub with tethers. See the testimony of Peter J. Myers. The "Third Redesign" is substantially to the redesigned hub but moved the location of the fabric straps and D-rings on the underside of the floor mat.[1]

No reasonable factfinder could find that: (a) any of the Accused Products contain every limitation of claim 20 of the '993 Patent; and (b) no reasonable factfinder could find the Accused Products having the Redesigned Hub are capable of performing every limitation of method claims 28-30 of the '993 Patent.[2]

**A.    Kolcraft Has Not Established The Accused Products Infringe Claim 20 Of The '993 Patent**

Claim 20 of the '993 Patent requires, among its elements:

An apparatus comprising:
…
at least one connector to couple the play gym to the floor mat; and
… wherein the at least one connector comprises a plurality of connectors, and the play gym comprises:
a hub; and
at least two legs, each of the legs having a first end coupled to the hub and a second end dimensioned to be removably coupled to a respective one of the connectors, wherein the at least two legs are pivotably coupled to the hub, wherein the connectors are pivotably coupled to the mat.

---

[1] For purposes of this Motion, the Second Redesign and Third Redesign are grouped together and referred to as the "Second Redesign." Both the Second Redesign and Third Redesign have the "Redesigned Hub."

[2] Kolcraft does not assert claim 31 of the '993 Patent against Artsana's Second Redesign and Third Redesign having the "Redesigned Hub."

**(1)    The claim term "wherein the connectors are pivotally coupled to the mat" is not present in the Accused Products**.

To infringe claim 20 of the '993 Patent, the Accused Products must have "at least one connector to couple the play gym to the floor mat . . . wherein the at least one connector comprises a plurality of connectors . . . wherein the connectors are pivotally coupled to the mat." No reasonable factfinder could find that any of the Accused Products contain these claim elements.

The Court construed "the connectors are pivotally coupled to the mat" as: "'[p]ivotally coupled' means linked, connected, or fastened such that the connector can rotate, turn, or move around a fixed point" and that "'[t]he connectors' is a generic term denoting *all* the connectors, including the 'at least one connector' and each of the 'plurality of connectors.'"[3] The Court explicitly excluded "fixed couplings" from its construction of "pivotably." (ECF No. 285 at 6-7). The Court's construction requires that "*all* the connectors -- the single compound connector and each of the plurality of connectors -- must be pivotably coupled to the mat." (ECF No. 285 at 10). The Court cited Figure 5 of the '993 Patent as an example of a connector having multiple connector parts, each one pivotably coupled to the mat. The Court stated "Figure 5 of the '993 patent shows a rivet (62) which couples a rotating plate (60) to the mat (16)" and "[i]n Figure 5, both the rivet and the plate are pivotably coupled to the mat."[4] Accordingly, both the rivet and the plate must be linked, connected, or fastened to the mat such that both of them rotate, turn, or move around a fixed point.

_____

[3] In order for claim 20 to avoid invalidity, the Court determined that the "at least one connector to couple the play gym to the floor mat . . . wherein the at least one connector comprises a plurality of connectors" means that "the at least one connector must itself be comprised of multiple connector parts." (*See* ECF No. 285 at fn. 7).

[4] Although Artsana disagrees that the specification of the '993 Patent describes a rivet that is pivotable, it applies the Court's Construction for the purposes of this Motion.

The Court construed "pivotably coupled" to mean "linked, connected, or fastened such that the leg can rotate, turn, or move around a fixed point." (ECF No. 285 at 11-12). Mr. Myers testified that he understood this construction. (Rough Tr. at p. 47). However, for all of Plaintiff's products, Mr. Myers never identified a "fixed point" around which the legs "rotate, turn, or move." His testimony on this issue does not establish, and a jury could not find, that the legs are pivotably coupled to the hub (i.e., that they are linked, connected, or fastened such that the leg can rotate, turn, or move around a fixed point."). The leg-mat connection of Artsana's Original Design had three parts: (1) a fabric pocket; (2) stitching connecting the pocket to the floor mat; and (3) a snap fixed to the pocket. During reexamination of the '993 Patent, Kolcraft identified sewing threads (i.e., stitching) as a connector in the context of connecting a fabric pocket to another material. Kolcraft's expert, Peter J. Myers, admitted that the fabric pocket of Artsana's Original Design is sewn to the floor mat with a line of stitching. Without the stitching, the fabric pocket would not be coupled to the floor mat.

The Court's construction requires that "<u>all</u> the connectors . . . must be pivotably coupled to the mat." Stitching is a fixed connection; a line of sewing threads do not "rotate, turn, or move around a fixed point." Therefore, not all the "connectors" in Artsana's Original Design are pivotably coupled to the mat. Like the '993 Patent's rivet (62) that attaches the plate (60) to the mat (16), the Original Design's stitching attaches the pocket to the mat. However, unlike the rivet, the stitching does not "rotate, turn, or move around a fixed point." In addition, the snap connector of Artsana's Original Design is not "pivotably coupled to the mat." The snap connector is fixed to the fabric pocket. Kolcraft's expert admits that the snap connector is connected to the fabric pocket, not the mat. The snap connector is not pivotably connected to the mat and it does not "rotate, turn, or move around a fixed point." No reasonable factfinder could find that Artsana's Original Design infringes claim 20 of the '993 Patent.

Both Artsana's First and Second Redesigns include three connector parts: (1) a fabric strap; (2) stitching that connects the fabric strap to the floor mat; and (3) a plastic D-ring that is contained within a fold created by the fabric strap being folded upon itself and stitched together. Kolcraft's expert, Peter J. Myers, admits that the fabric strap is "directly sewn onto the underside of the floor mat with four lines of stitching." Without the four lines of stitching, the fabric strap would not be coupled to the floor mat. Stitching is a fixed connection. The four lines of sewing threads do not "rotate, turn, or move around a fixed point," and therefore not all the connectors are pivotably coupled to the mat. Neither the fabric strap nor the D-ring is "pivotably coupled to the mat." As Kolcraft's expert admits, the fabric strap is stitched to the underside of the mat. The fabric strap is not pivotably connected to the mat and it does not "rotate, turn, or move around a fixed point;" it is secured to the mat on four sides via stitching. The D-ring is not "pivotably coupled to the mat," it is contained within a fold created by folding the fabric strap upon itself and stitching it together. The D-ring is not linked, connected, or fastened to the mat such that the D-ring connector can rotate, turn, or move around a fixed point. No reasonable factfinder could find that Artsana's First and Second Redesigns infringe claim 20 of the '993 Patent.

**(2)    The claim term "wherein the at least two legs are pivotably coupled to the hub" is not present in the Second Redesign**

Artsana's Second Redesign with the Redesigned Hub does not have "a hub; and at least two legs, each of the legs having a first end coupled to the hub . . ., wherein the at least two legs are pivotably coupled to the hub," and no reasonable factfinder could find that Artsana's Second Redesign contains these claimed elements. The Court construed the claim term "pivotably coupled" as used in the claim phrase, "the at least two legs are pivotably coupled to the hub," to mean "linked, connected, or fastened such that the leg can rotate, turn, or move around a fixed

point." The Court noted that this construction was mostly governed by the prior claim-construction opinion of "pivoting the leg." The Court stated, "fixed" or "non-movable" couplings were excluded by the Court's construction of "pivotably."

Artsana's Redesigned Hub includes four openings or cavities that are configured to receive a first end of a play gym leg. When a leg end is inserted into a hub opening, it is not movable within that opening and is fixed in a "locking position." Kolcraft's expert testified that such a male/female connection is <u>not</u> a "pivotable connection."

Fabric sleeves encasing the legs of Artsana's Second Redesign are tethered to the bottom of the hub. The tethers do not link, connect, or fasten the legs so that they can rotate, turn, or move around a fixed point. Mr. Myers did not identify any fixed point that the legs rotate, turn or move around. When the legs are removed from the hub, the fabric sleeves encasing the legs remain tethered to the hub and the legs can move in any direction. The legs of Artsana's Second Redesign are not pivotally coupled to the hub and no reasonable factfinder could find that Artsana's Second Redesign infringes claim 20 of the '993 Patent.

Kolcraft's infringement contentions for claim 20 are irreconcilable. Kolcraft and its expert contend that the claim term "wherein the at least two legs are pivotally coupled to the hub" is met by the tether connection when the ends of the legs are <u>disconnected</u> from the hub. However, because disconnecting the legs removes the legs from the hub, Artsana's Second Redesign cannot meet the required claim element of "each of the legs having a first end coupled to the hub." As a result, Kolcraft cannot establish that Artsana's Second Redesign infringes in any one state because Kolcraft cannot prove Artsana's Second Redesign meets the "each of the legs having a first end coupled to the hub" and the "wherein the at least two legs are pivotally coupled to the hub" limitations at the same time. *See Viatech Tech. v. Microsoft Corp.*, 2017

U.S. Dist. LEXIS 89596, *9 (D. Del. Jun. 12, 2017) ("Plaintiff cannot establish the accused software infringes in any one state because Plaintiff cannot prove the accused products meet the "license database" and the "file" limitations at the same time").  No reasonable factfinder could find that Artsana's Second Redesign infringes claim 20 of the '993 Patent.

## B.    Kolcraft Has Failed To Establish Direct Infringement Of Claims 28-31 Of The '993 Patent

There is no trial evidence to support a finding that Artsana directly infringed claims 28-31 of the '993 Patent.  Kolcraft cannot dispute that there is no evidence measuring the extent to which the methods of claims 28-31 of the '993 Patent are actually practiced.

Kolcraft had the burden of correlating the requested damages award for method claims "***to the extent the infringing method is used*** by consumers."  *Lucent Techs. v. Gateway,* 580 F.3d 1301, 1324, 1334 (Fed. Cir. 2009) (emphasis added).  Kolcraft has <u>not</u> presented any quantitative evidence of the extent to which the methods of claims 28-31 are used by consumers. (ECF No. 335 ¶ 33, 37).

Kolcraft's alleged evidence of use, at best, is based on <u>one</u> consumer, Ms. Tiffany Manzella.  This one alleged use is statistically insufficient to correlate to the approximately 400,000 sales of the Accused Products.  *Lucent*, 580 F.3d at 1323, 1334 (holding that damages award based on total of 110 million units of products capable of practicing claimed methods was not supported and based on speculation where the evidence only supported one actual use of the patented method).  Furthermore, Ms. Manzella's testimony only alleges use of the Original Design, and is irrelevant on use of the First, Second, or Third Redesigns, (i.e., DTX-296, PTX-8, PTX-9).  Kolcraft has failed to submit any evidence of use of the First, Second, or Third Redesigns, (i.e., DTX-296, PTX-8, PTX-9)

Kolcraft's remaining uses are not supported by <u>any</u> actual evidence.  Kolcraft relies on: (1) its President's speculation; (2) non-specific sales meetings and product demonstrations; and

(3) the mere "capability" of the Accused Products to infringe because of the features in the manuals. None of these constitute proof of actual use. *Standard Havens Prods. v. Gencor Indus.,* 953 F.2d 1360, 1374 (Fed. Cir. 1991) (method claims held not directly infringed by the mere sale of an apparatus capable of performing the claimed process); *Imagexpo v. Microsoft*, 284 F.Supp.2d 365, 369-70 (E.D. Va. 2003); *Cardiac Pacemakers v. St. Jude Med.,* 418 F.Supp. 2d 1021, 1040 (S.D. Ind. 2006), *aff'd in relevant part,* 576 F.3d 1348, 1359 (Fed. Cir. 2009) ("[Plaintiff] may not recover damages for the sales of devices merely capable of infringing [a claimed method].").

The evidence here establishes that the Accused Products have substantial non-infringing uses (*i.e.*, use as a playard, bassinet, and changing table without play gym). While the Federal Circuit acknowledged, in *Lucent*, that there is "no rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence," it also held that there is no support for a damages award based on infringement of method claims where "the evidence of record is conspicuously devoid of any data about how often consumers use the patented [method]." *Id*. at 1334. No reasonable factfinder could find that Artsana directly infringed claims 28-31 of the '993 Patent because Kolcraft could only point to one alleged use. Artsana is therefore entitled to judgment of no direct infringement of claims 28-31 as a matter of law.

## C.    Kolcraft Has Failed To Establish Induced Infringement

In order to establish a claim for induced infringement Kolcraft must show that Artsana actively induced infringement of a patent. 35 U.S.C. § 271(b). The alleged infringer must be shown, however, to have *knowingly* induced infringement. *Water Technologies v. Calco,* 850 F.2d 660, 668 (Fed.Cir.1988). It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts

alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements. *Id.* Here Kolcraft has failed to introduce evidence supporting this claim and no reasonable jury could find Artsana liable for this claim based on the evidence.

**D.      Kolcraft Has Failed To Establish Contributory Infringement**

A plaintiff claiming contributory infringement must establish the following elements: "(1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component [provided by the defendant] has no substantial non-infringing uses, and (4) that the component is a material part of the invention." *Fujitsu v. Netgear,* 620 F.3d 1321, 1326 (Fed. Cir. 2010, *citing* 35 U.S.C. § 271(c). Here Kolcraft has failed to introduce evidence supporting this claim and no reasonable jury could find Artsana liable for this claim based on the evidence.

**E.      Artsana's Second Redesign Does Not Infringe Claims 28-30 Of The '993 Patent**

Artsana's Second Redesign does not infringe claim 28 of the '993 Patent, which recites:

> A method comprising:
> securing a play gym at least partially above at least one of a bassinet and a playard;
> removing the play gym from the at least one of the bassinet and the playard;
> securing the play gym to a mat apart from the play gym and the bassinet;
> removing the play gym from the mat; and
> collapsing the play gym, wherein collapsing the play gym comprises:
> pulling a leg of the play gym in a direction away from a hub; and
> pivoting the leg into a stored position.

No reasonable factfinder could find that Artsana's Second Redesign is capable of practicing the method step, "collapsing the play gym, wherein collapsing the play gym comprises pulling a leg of the play gym in a direction away from a hub; and pivoting the leg into a stored

position." The Court construed the claim phrase "pivoting the leg into a stored position" of claim 28 to mean "that the leg must rotate, turn, or move about a fixed point into a stored position" and that "[t]he 'stored position' is when the legs are generally parallel to each other." The Court rejected Kolcraft's argument that "any sort of movement of the legs satisfies the 'pivoting' requirement, as long as the legs are eventually parallel to each other," noting that "[t]he term 'pivoting' must do some work; otherwise, the claim could have said '*moving* the leg into a stored position." (ECF No. 216 at 22) The Court stated, "even if the leg is not moving around a pin, it must be around some sort of fixed point involving a hinge, joint (such as ball and socket), or other similar mechanism." (ECF No. 216 at 24-25).

As stated above, Artsana's Redesigned Hub includes four openings or cavities that are configured to receive a first end of a play gym leg, and the legs are tethered to the bottom of the hub via fabric straps attached to sleeves encasing the legs. When the ends of the legs are disconnected from the hub, the legs can freely move in any direction; they do not "rotate, turn, or move about a fixed point into a stored position." (*Id.* at 25). When a user removes a leg from the hub, gravity moves the leg toward the ground. The legs may take any path until their movement is stopped by the tether. The legs are only limited by how far they can travel away from the hub, like a dog on a leash. As the Court has recognized, "[t]he term 'pivoting' must do some work; otherwise, the claim could have said '*moving* the leg into a stored position." (ECF No. 216 at 22 (emphasis in original)).

## F.  Artsana's Redesign Does Not Infringe Claims 28-31 of the '993 Patent

There is no trial evidence to support a finding that Artsana's Redesigned Hub ("Artsana's Redesigned Hub") infringes claim 28-31 of the '993 Patent. Claim 28 of the '993 Patent recites, in part:

A method comprising:
    securing a play gym at least partially above at least one of a
bassinet and a playard; . . .
    pulling a leg of the play gym in a direction away from a hub; and
    **pivoting the leg into a stored position**.

(emphasis added). To infringe claim 28 of the '993 Patent, the Redesign must pivot into a "stored position." No reasonable factfinder could find that the Redesign "pivots" or that it "pivots into a stored position."

Kolcraft has not established that Artsana's Redesigned Hub includes any structure that defines a stored position. Unlike Artsana's Redesigned Hub, Kolcraft described specific structures for its "stored position", which was confirmed Kolcraft's witness, Mr. Myers, emphasis the stored position at trial:

> Q. So inside the hub that you have in the Kolcraft product and the '993 patent, you have defined specific structures that create a stored position for the leg and an open position for the leg?
>
> A. That is correct.
>
> Q. And particularly in the stored position, they can't be in any other position, correct?
>
> A. Correct.

(Myers Cross at p. 77). One element of the structure includes element 40, comprising a cavity, which Kolcraft defined as "a pocket for the leg to rest into." (*Id.* at 78). Mr. Myers also confirmed that Artsana's Redesign hub has no structure for a stored position, and no pin to hold the legs in any cavity:

> Q. Did you find any configuration of cavities inside the hub of the second configuration that corresponded to the first configuration that you showed us?
>
> A. Well, like I say, there is a cavity for the open position. **There is not a cavity for the stored position**. . . .

Q.    When you look at the second configuration, do you see any form of a pin that holds the leg relative to the hub?

A.    **No. There is no pin.**

(*Id*. at 80-81) (emphasis added).    Artsana's Redesigned Hub lacks any stored position and it cannot infringe the '993 patent. No reasonable factfinder could find that Artsana's Redesign is capable of infringing claim 28 of the '993 Patent because the Redesigned Hub does not have a stored position. Claims 29, 30, and 31 depend from claim 28 and Artsana's Redesign is incapable of infringing claims 29, 30, and 31 for the same reasons set forth with respect to claim 28.

No reasonable factfinder could find that Artsana's Second Redesign is capable of infringing claim 28 of the '993 Patent.  Claims 29 and 30 depend from claim 28 and Artsana's Second Redesign is incapable of infringing claims 29 and 30 for the same reasons set forth with respect to claim 28.

## G.    Kolcraft Has Not Established Willful Infringement

The Court has already entered summary judgment on Kolcraft's willful infringement claim for the time before Koltun's alleged phone call to Artsana.  Judgment should be entered on the remainder of Kolcraft's willful infringement claim because there is no evidence that Artsana's conduct was "willful, wanton, malicious, bad faith, deliberate, consciously wrong, flagrant, or – indeed – characteristic of a pirate." *Halo Elecs. v. Pulse Elecs.,* 136 S.Ct. 1923, 1932 (2016).  "The Supreme Court has made clear that an award of enhanced damages under section 284 is reserved for 'egregious cases.'" *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.,* 2017 WL 2190055, *1 (E.D. Tex. May 18, 2017) (granting Rule 50(a) motion for JMOL of no willfulness), *quoting Halo Elecs. v. Pulse Elecs.,* 136 S.Ct. 1923, 1932, 1934 (2016).  As the Supreme Court explained in *Halo*, awards of enhanced damages "are not to be meted out in a

typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or-indeed-characteristic of a pirate." 136 S.Ct. at 1932. The trial evidence demonstrated just the opposite of what is required for willfulness. The evidence of record discloses that Artsana has maintained substantial non-infringement and invalidity defenses throughout the course of this proceeding. Artsana undertook actions to redesign its Accused Products with the intention of avoiding any further claim for infringement of the '993 Patent.

"Kolcraft admits that it did not sell a product covered by any claim of the '993 Patent after May 27, 2008 – all such sales occurred prior to May 27, 2008." Because Kolcraft did not sell any product covered by the '993 Patent after the issue date of the '993 Patent, it never marked any of its products with notice of the '993 Patent pursuant to 35 U.S.C. § 287(a). Artsana first began selling its Accused Products in 2005. Artsana's first knowledge of the '993 Patent was Kolcraft's June 3, 2009 Complaint alleging that Artsana's Accused Products infringe "at least claims 1-12 and 18-21 of the '993 patent." Since at least August 20, 2009 when it filed its Answer, Artsana has denied infringement of the '993 Patent and maintained that the '993 Patent is invalid. As part of Artsana's invalidity defense, it filed a request for *inter partes* reexamination ("IPRex"), in which the USPTO initially agreed that Artsana's request raised substantial new questions of patentability of <u>all</u> claims of the '993 Patent (*i.e.*, claims 28-31). The USPTO subsequently rejected claims 1-27 of the '993 Patent and confirmed the patentability of claims 28-31. The IPRex concluded with: (1) confirmation of claims 28-31; (2) the cancellation of claims 22, 23, and 27 in view of the prior art; (3) amendments to claims 1-16, 18, 19, 21, and 24-26 to overcome prior art rejections; and (4) the amendment of claims 17 and 20 to

be in independent form.  In 2010, Artsana redesigned the toy gym sold with its Accused Product (*i.e.*, Second Redesign with Redesigned Hub) with the intention of avoiding any claim for infringement of the '993 Patent.  Artsana's Second Redesign was commercially available in August 2010.

35 U.S.C. § 284 provides that "the court may increase the damages [for patent infringement] up to three times the amount found or assessed" by the finder of fact for willful infringement.  It is well settled that in order "[t]o willfully infringe a patent, the patent must exist and [the accused infringer] must have knowledge of it."  *State Indus v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).  Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior."  *Halo*, 136 S.Ct. at 1932.  "The sort of conduct warranting enhanced damages . . . [is] willful, wanton,  malicious, bad-faith, deliberate, consciously wrongful, flagrant, or -- indeed—characteristic of a pirate." *Id.*  "[S]uch damages are generally reserved for egregious cases of culpable behavior."  *Id.*

It is well settled that knowledge of the patent alleged to be willfully infringed is a prerequisite to enhanced damages.  *WBIP v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016), *citing Halo*, 136 S.Ct. at 1932-33.   The appropriate time frame for considering willful infringement is the accused infringer's knowledge at the time of the challenged conduct. *Halo,* 136 S.Ct. at 1933; *Halo Elecs. v. Pulse Elecs.* 831 F.3d 1369, 1381 (Fed. Cir. 2016) (on remand from the Supreme Court); *see also Mentor Graphics Corp. v. EVE-USA,* 851 F.3d 1275, 1295 (Fed. Cir. 2017) ("The relevant date for determining which conduct is pre-suit is the date of the patentee's affirmative allegation of infringement, in this case the date of [the [patentee's] counterclaim.").

Artsana's first knowledge of the '993 Patent was on June 3, 2009. Kolcraft admits that it did not sell any product alleged to be covered by the '993 Patent after May 27, 2008. Kolcraft never marked any of its products with notice of the '993 Patent pursuant to 35 U.S.C. § 287(a). Courts have routinely required that plaintiffs plead knowledge of the actual patents at issue and not mere knowledge of the pendency of patent applications to establish willful infringement. *LML Holdings v. Pac. Coast Distrib.*, 2012 U.S. Dist. LEXIS 75843, *11 (N.D.Cal. May 30, 2012); *IpVenture v. Cellco Partnership*, 2011 U.S. Dist. LEXIS 5955, *7-9 (N.D.Cal. Jan. 21, 2011) (dismissing claim for willful infringement where complaint provided "no facts to support the claim that defendants actually had knowledge of the issued patent."). This is because "[a] 'patent pending' notice gives one no knowledge whatsoever … . Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable." *State Indus.,* 751 F.2d at 1236; *Adidas Am. v. Skechers USA,* 2017 U.S. Dist. LEXIS 89752, *8-9 (D. Or. Jun. 12, 2017) ("It follows that an infringer's knowledge of the patent application cannot, standing alone, constitute knowledge of the resulting, or issued, patent-in-suit.")

Because Artsana did not have knowledge of the '993 Patent prior to the Complaint, it is entitled to judgment of no willful infringement for at least the pre-filing period. *Halo,* 136 S.Ct. at 1933. Judgment should be entered in Artsana's favor should be granted on Kolcraft's willfulness claim because Artsana did not have a good faith basis for alleging willful infringement at the time when its complaint was filed. *Halo*, 136 S.Ct. at 1923, 1926, 1933 (willfulness "is generally measured against the knowledge of the actor at the time of the challenged conduct."); *Adidas*, 2017 U.S. Dist. LEXIS 89752, *11-13.

Artsana did not have knowledge of the '993 Patent until Kolcraft filed its Complaint. Because there was no basis for Kolcraft's claim for willfulness at the time its Complaint was filed, Artsana is entitled to judgment of no willful infringement during the post-filing period.

Kolcraft's basis for alleging willful infringement is that:

> With full notice and knowledge of the Kolcraft '993 patent, Chicco infringed and continues to infringe the patent without any competent advice of counsel. Chicco admitted that the claims of the '993 patent, including claims 28-31, are infringed by the various iterations of the Lullaby LX Playard (see transcript of May 2, 2012 deposition of Mark Messner). Chicco intentionally delayed this litigation for years while it unsuccessfully tried to invalidate the '993 patent in the PTO reexamination proceeding. The PTO confirmed the patentability of the '993 claims, yet Chicco continues to infringe the patent. Accordingly, any damage award in this case should be trebled and attorneys' fees awarded pursuant to 35 U.S.C. §§ 284 and 285. Chicco is in possession of documents that "refer or relate" to this response.

Kolcraft's vague, incorrect, and conclusory allegations cannot support a claim for willful infringement. This conclusory statement cannot support a plausible inference that Artsana willfully infringed the asserted patents, or otherwise engaged in the type of "egregious infringement behavior" that would warrant enhanced damages "as a 'punitive' or 'vindictive' sanction." *Halo*, 136 S.Ct. at 1932. This is not a case of egregious conduct.

The factual circumstances in *Halo* and *Stryker* provide examples of the sort of egregious conduct that could support an award of enhanced damages. Halo and Pulse were competitors in the market for certain electronic devices. Halo sent Pulse two letters offering to license Halo's patents. Pulse rebuffed the offers and continued to sell its allegedly infringing products. *Id*. at 1930-31. In the companion case of *Stryker v. Zimmer*, Stryker competed with Zimmer in the market for a type of medical device. At trial, testimony was presented that "Zimmer had 'all-but instructed its design team to copy Stryker's products,' … and had chosen a 'high-risk/high-reward strategy of competing immediately and aggressively …' while 'opt[ing] to worry about

the potential legal consequences later." The district court awarded enhanced damages "[g]iven the one-sidedness of the case and the flagrancy and scope of Zimmer's infringement." *Id*. at 1931. The facts of this case are nothing like those presented in *Halo* and *Stryker*.

Kolcraft's allegations lack the requisite specificity to support a claim for willful infringement. "Other than the mere suggestion that infringement continues, there are no facts . . . that would support a claim of recklessness." *Vasudevan Software v. TIBCO Software*, 2012 U.S. Dist. LEXIS 69952, *15 (N.D.Cal. May 17, 2012). Continued sales of accused products by itself does not constitute an "egregious case[] of misconduct beyond typical infringement." *Halo*, 136 S.Ct. at 1935; *see also Princeton Digital Image v. Ubisoft Entertainment SA*, 2016 U.S. Dist. LEXIS 153207, *41 (D.Del. Nov. 4, 2016) (recommending dismissal of post-suit willfulness because complaint failed to "allege any facts suggesting that [d]efendant's conduct is egregious . . . beyond typical infringement").

Upon learning of the '993 Patent, Artsana hired counsel, investigated Kolcraft's claims, and determined that they were not valid -- as evidenced by Artsana's non-infringement and invalidity positions. Artsana's invalidity positions in the IPRex resulted in all but 6 of the 31 claims of the '993 Patent being amended or cancelled. Artsana took the additional step of redesigning its Accused Products with the intention of avoiding any claim for infringement.

Artsana's conduct simply does not rise to the level of being "malicious," "flagrant," or "characteristic of a pirate." *See Halo*, 136 S.Ct. at 1932. This case is nothing more than a "run of-the-mill" or "garden-variety" patent infringement dispute between two competitors. As such, it fits well within the bounds of cases where courts have declined to award enhanced damages regardless of whether there had been or could be a prior determination of willfulness. *See*, *e.g.*, *Greatbatch Ltd. v. AVX Corp.*, 2016 U.S. Dist. LEXIS 171939, *15 (D.Del. Dec. 13, 2016)

(refusing to vacate summary judgment of no willful infringement because "[Plaintiff] has failed to identify evidence of egregious infringement of the [patents-in-suit]"); *Vehicle IP v. AT&T Mobility*, 227 F.Supp.3d 319, 331 (D. Del. 2016) (granting summary judgment where the patentee did not present evidence "that could show that the [defendants'] infringement was 'egregious,' 'deliberate,' 'wanton,' or otherwise characteristic of the type of infringement that warrants the Court in exercising its discretion to impose the 'punitive' sanction of enhanced damages"); *Presidio Components v. Am. Tech. Ceramics*, 2016 U.S. Dist. LEXIS 110212, *73 (S.D.Cal. Aug. 17, 2016), *aff'd*, 875 F.3d 1369, 1382-83 (Fed. Cir. 2017) (declining to enhance damages after jury finding of willful infringement based on determination that the case "was a 'garden-variety' hard-fought patent infringement action between two competitors" in which the defendant "developed noninfringement and invalidity theories that were supported by expert reports," "filed motions for summary judgment on several issues," and "succeeded in causing [the plaintiff] to substantively narrow the scope of the asserted claims in reexamination proceedings … ."); *Trs. of Bos. Univ. v. Everlight Elecs. Co.,* 212 F.Supp.3d 254, 258 (D. Mass. 2016) (declining to enhance damages after jury finding of willful infringement where the accused infringers did not, among other things, "deliberately copy" or "try to conceal [the infringing products]").

Kolcraft's failure to seek a preliminary injunction undercuts its claim for willful infringement based on the accused infringer's post-filing conduct. *Shire Viropharma v. CSL Behring,* 2018 U.S. Dist. LEXIS 2621, *11 (D. Del. Jan. 8, 2018) ("Defendants correctly argue that Plaintiff's failure to seek a preliminary injunction undercuts Plaintiff's claim of willful infringement"). This is because "a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement," as

opposed to permitting the patentee to sit back and "accrue enhanced damages based solely on the infringer's post-filing conduct." *In re Seagate*, 497 F.3d at 1374, *abrogated on other grounds by Halo*, 136 S.Ct. 1923 (2016).

**H.     Kolcraft Has Failed To Establish Damages Prior To June 3, 2009**

The earliest date that Kolcraft provided "actual notice" of the '993 Patent to Artsana was its June 3, 2009 Complaint, and Kolcraft admittedly did not provide "constructive notice" by marking its products with notice of the '993 Patent under 35 U.S.C. § 287(a). Kolcraft has provided no evidence to the contrary. To the extent that Kolcraft is entitled to any damages, judgment is appropriate to preclude recovery of any damages prior to June 3, 2009. Under the marking statute, 35 U.S.C. § 287(a), Kolcraft cannot recover damages for patent infringement prior to the date that it provided actual or constructive notice of the patent:

> by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or by fixing thereon the word "patent" or the abbreviation "pat." together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice.

*Id.*

The patentee has the burden of proving compliance with § 287(a) by showing either (1) marking its product with notice of the patent; or (2) that it gave notice of infringement to the alleged infringer. *Maxwell v. J. Baker,* 86 F.3d 1098, 1111 (Fed. Cir. 1996), *quoting Am. Med. Sys. v. Med. Eng'g*, 6 F.3d 1523, 1537 (Fed. Cir. 1993). The duty of alleging and the burden of proving marking or notice is upon the patentee. *See Motorola v. U.S.,* 729 F.2d 765, 770 (Fed. Cir. 1984) (patentee has burden of proof to "show at trial that he had complied with the requirements of the statute"); *Maxwell*, 86 F.3d at 1111 ("As the patentee, [plaintiff] had the burden of pleading and proving at trial that she complied with the statutory requirements."); *Nike*

*v. Wal-Mart Stores,* 138 F.3d 1437, 1446 (Fed. Cir. 1998) (same); *Devices for Medicine v. Boehl*, 822 F.2d 1062, 1066 (Fed. Cir. 1987) (same).

Absent marking, a patentee may not recover damages without proof that "the infringer was notified of the infringement." *Amsted Indus. v. Buckeye Steel Castings*, 24 F.3d 178, 186 (Fed. Cir. 1994), *citing* 35 U.S.C. § 287(a). "For purposes of section 287(a), notice must be of 'the infringement,' not merely notice of the patent's existence or ownership." *Id.* at 187. In particular, "notice of infringement" requires "a specific charge of infringement by a specific accused product or device." *Id.* Because Artsana's first notice of the '993 Patent was the June 3, 2009 Complaint, Artsana is entitled to judgment that Kolcraft is precluded from recovering damages prior to June 3, 2009.

## I. Kolcraft Has Failed To Establish Damages On Method Claims 28-31 Of The '993 Patent

Artsana is entitled to judgment of no damages with respect to method claims 28-31 of the '993 Patent because Kolcraft presented no evidence to quantify the extent to which the accused method is actually practiced by users of the Accused Products. "'A method claim is directly infringed only by one practicing the patented method.' *Joy Tech. v. Flakt,* 6 F.3d 770, 775 (Fed. Cir. 1993) … . 'The law is unequivocal that the sale of equipment to perform a process is not a sale of the process.' [*Id.* at 773]. Therefore, [a patentee] can only receive infringement damages on those devices that actually performed the patented method during the relevant infringement period." *Cardiac Pacemakers v. St. Jude Medical,* 576 F.3d 1348, 1358-59 (Fed. Cir. 2009); *see also UTStarcom v. Starent Networks*, 2005 U.S. Dist. LEXIS 40520, *8 (N.D.Cal. Dec. 6, 2005) ("The manufacture and sale of a *device* without more cannot directly infringe a method patent for a method that employs such devices; such a *method* patent is directly infringed only when the device is actually used in the claimed method."); *Mendenhall v. Cedarapids,* 5 F.3d 1557, 1579

(Fed. Cir. 1993) (manufacture and sale of a drum mixer did not directly infringe method patent that covered method for preparation of hot mix asphalt). Sale of a product capable of infringing a method claim is not evidence of infringement of a method claim. *See Ormco Corp. v. Align Tech., Inc.,* 463 F.3d 1299, 1310-11 (Fed. Cir. 2006).; *Joy Techs,* 6 F.3d at 774-75; *Standard Havens Prods. v. Gencor Indus.,* 953 F.2d 1360, 1374 (Fed. Cir. 1991).

"The burden of proving damages falls on the patentee," and the damages award should be correlated "***to the extent the infringing method is used*** by consumers." *Lucent*, 580 F.3d at 1324, 1334 (emphasis added). In *Lucent*, the Federal Circuit reversed the district court's denial of JMOL and vacated a damages award where Lucent failed to meet its burden to prove "how often *consumers use the patented* date-picker invention" (*i.e.*, how often the infringing method was used in the United States). *Id.* at 1334, 1340.

Kolcraft asserts that the royalty base consists of all of Artsana's sales of Accused Products during the relevant period. However, the Accused Products are capable of being used without performing the method of claims 28-31. Like the patentee in *Lucent*, Kolcraft presented no evidence to measure the extent, if any, to which the allegedly infringing method is used by Artsana's customers. As such, Kolcraft's damages claim with respect to method claims 28-31 is entirely speculative.

Artsana should be granted judgment that Kolcraft has no recoverable damages with respect to method claims 28-31. *See Lucent*, 580 F.3d at 1334-35 (finding jury's damages award was "not supported by substantial evidence, but [was] based mainly on speculation or guesswork," where patentee failed to present evidence "describing how many . . . users had ever performed the patented method or how many times.").

**J.     The '993 Patent Is Invalid For Failure To Identify The Correct Inventors**

U.S. Patent Application No. 10/725,071 ("'071 Application"), which led to the '993 Patent was filed for the sole purpose of correcting inventorship.   The parent application of the '993 Patent, U.S. Patent Appln. No. 10/431,079 ("parent '079 Application"), was abandoned because it recited the incorrect inventors.   In October 2001, Joseph Paul Sejnowski of ITEM New Product Development, Ltd. was hired by Kolcraft to develop new concepts to enhance Kolcraft's existing playard product line.   Mr. Sejnowski delivered a playard concept sketch that became the concept for the subject matter of the '993 Patent.   However, Mr. Sejnowski's concept sketch did not include legs that are pivotably coupled to a hub (*Id.* at ¶ 65), and he was omitted as an inventor of the parent '079 Application.   Peter J. Myers executed an inventor declaration in the parent '079 Application stating that he was the original and sole inventor.   The '071 Application included the same claims as the originally filed parent '079 Application, but named Myers and Sejnowski as joint inventors.   Myers executed a new inventor declaration in the '071 Application stating that he was now a joint inventor, rendering his original declaration false.

Kolcraft engaged its manufacturer, Lerado, with respect to its new playard concept by submitting a sample play gym that included two crossing arches.   The sample submitted to Lerado did not include four legs pivotably connected to a center hub.   Lerado produced a first prototype play gym with four play gym legs that were joined to a single piece molded hub by elastic straps and provided it to Kolcraft.   Kolcraft provided feedback to Lerado with respect to the hub and foot connectors.   With respect to the hub, Kolcraft requested that the elastic connection be modified, but did not provide specific direction.   With respect to the foot connectors, Kolcraft provided 3D drawings of the foot connectors to be added.   At a later date, Kolcraft provided updated drawings of the foot connectors.

In response to Kolcraft's concern over the elastic hub connection, Lerado modified the hub to be a two piece assembly consisting of an upper cover and a lower cover to house a spring and connection portion of the four play gym legs. Lerado produced engineering drawings of this modified design, completed multiple patent searches, and filed three patent applications. (The patent applications filed by Lerado disclose the subject matter relating to the hub shown in Figures 2-4 and 7-9 of the '993 Patent and claimed in claims 20 and 28-31, and Huang-Yi Cheng, Ming-Chi Tsai, Ho-Sheng Chen ("Lerado Inventors") are identified as the inventors of this feature. There are multiple documents supporting the conclusion that the Lerado Inventors are joint inventors who remain unnamed.

The '993 Patent is invalid in light of Kolcraft's failure to list the Lerado Inventors, Huang-Yi Cheng, Ming-Chi Tsai, and Hi-Sheng Chen, as joint inventors. One condition for patentability is that all joint inventors are listed on the patent. 25 U.S.C. §§ 102(f), 116. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998) ("[I]f nonjoinder of an actual inventor is proved . . . a patent is rendered invalid."). To be an inventor, one need not have made an equal contribution as the other inventors. *See* 35 U.S.C. § 116. The inventor must only "(1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Pannu*, 155 F.3d at 1351.

Inventorship is a question of law. *Nartron Corp. v. Schukra USA,* 558 F.3d 1352, 1356 (Fed. Cir. 2009). There is a presumption that the listed inventors are correct and the party claiming misjoinder or non-joinder of the proper inventors, in turn, "must meet the heavy burden

of proving its case by clear and convincing evidence." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004). The weight of the evidence in this case is clear and convincing that the Lerado Inventors, Huang-Yi Cheng, Ming-Chi Tsai, Ho-Sheng Chen, are at least joint inventors of the hub claimed in at least claims 20 and 28-31 of the '993 Patent and should have been named as joint inventors. The evidence is clear that the Lerado Inventors contributed in a significant manner to the conception and reduction to practice of legs that are pivotably coupled to a hub, and their contribution is significant in quality. Kolcraft failed to produce any evidence, other than the uncorroborated testimony of Mr. Myers, that he communicated the invention of legs that are pivotably coupled to a hub to Lerado. There is evidence that Myers provided direction to Lerado regarding the <u>foot connectors</u>. However, no emails, sketches, engineering drawings, or the like that show legs pivotably coupled to the hub originating from Kolcraft have been produced in this case to evidence that Kolcraft invented this claimed feature.

Mr. Myers' inventorship claims are contradicted by the evidence Kolcraft did produce and his later testimony. In the Rebuttal Expert Report of Peter J. Myers Regarding the Validity of U.S. Patent No. 7,376,993, Myers states:

> Before discussing the invention to [sic] Lerado, Kolcraft created the prototype labeled ORIGINAL VERSION shown in KOL001571. Realizing the play gym legs of the ORIGINAL VERSION would not easily fit into existing packaging, Joseph Paul Sejnowski and I conceived the idea of utilizing a hub with pivoting legs, as claimed, rather than the less expensive connection shown in the ORIGINAL VERSION.

However, Kolcraft testified that Mr. Sejnowski had <u>no</u> involvement in the design, development, or conception of the subject matter of the '993 Patent following his October 30, 2001 presentation of the play gym concept, which did not include legs pivotably coupled to a hub. At

his May 11, 2018 deposition, Mr. Myers testified that Mr. Sejnowski had <u>no</u> involvement in developing the hub after his concept sketch. The weight of the evidence is clear and convincing that Huang-Yi Cheng, Ming-Chi Tsai, and Hi-Sheng Chen conceived and reduced to practice legs that are pivotably coupled to a hub and they are unnamed joint inventors of the '993 Patent. The '993 Patent is invalid due to Kolcraft's failure to identify the correct inventors.

## **CONCLUSION**

WHEREFORE, Defendant, Artsana USA, Inc., respectfully requests this Honorable Court grant its Motion for Judgment as a Matter of Law.

Respectfully submitted,

ARTSANA USA, Inc.

By: /s/ James K. Borcia
    One of its Attorneys

James K. Borcia (jborcia@tresslerllp.com)
TRESSLER LLP
233 S. Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000
Fax: (312) 627-1717

Anthony S. Volpe (AVolpe@vklaw.com)
Ryan W. O'Donnell (RODonnell@vklaw.com)
Max S. Morgan (MMorgan@vklaw.com)
VOLPE AND KOENIG, P.C.
United Plaza, 30 South 17th Street
Philadelphia, PA 19103
(215) 568-6400
Fax: (215) 568-6499

4827-4920-5359 v.1 4815-7789-1953 v.3 (9023-1)