IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KOLCRAFT ENTERPRISES, INC., | |
| Plaintiff, | Civil Action No. 1:09-cv-03339 |
| v. | Judge Edmond E. Chang |
| CHICCO USA, INC. d/b/a ARTSANA USA, INC., | |
| Defendant. | |

**PLAINTIFF'S MOTION FOR ENTRY OF A PERMANENT INJUNCTION**

I. **INTRODUCTION**

On August 31, 2018, the jury found that Defendant Chicco USA, Inc. d/b/a Artsana USA, Inc.'s ("Chicco") accused Lullaby products, which includes the Chicco Lullaby, Lullaby LX, Lullaby SE, and Lullaby LX/SE ("Accused Lullaby Products"), infringed asserted claims 20 and 28-31 ("Asserted Claims") of Plaintiff Kolcraft Enterprises, Inc.'s ("Kolcraft") patent-in-suit, U.S. Patent No. 7,376,993 ("the '993 Patent"). (Verdict Form, Questions 1-3 at 1-3, Dkt. #413 (sealed as to jurors' identities).) The jury also found that Chicco willfully infringed *each* Asserted Claim of the '993 Patent for *each* of Chicco's Accused Lullaby Products. (*Id.*, Question 8 at 8.) This Court entered judgment on the jury's verdict on September 4, 2018. (Dkt. #411.)

Kolcraft now respectfully requests that the Court enter an immediate and permanent injunction pursuant to Fed. R. Civ. P. 65 and 35 U.S.C. § 283 enjoining Chicco from making, using, selling, offering to sell, distributing, importing, advertising, and/or promoting within the United States Chicco's Accused Lullaby Products and any product no more than colorably different therefrom. Kolcraft submits a Proposed (and narrowly-tailored) Order concurrently herewith. (Ex. A.)

The jury has spoken; all of Chicco's Accused Lullaby Products infringe the Asserted Claims of Kolcraft's '993 Patent, and the infringement was willful. The record clearly supports entry of a permanent injunction here.

## II. THE COURT SHOULD ENTER A PERMANENT INJUNCTION

To obtain a permanent injunction, Kolcraft must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). As discussed in detail below, these factors all weigh strongly in favor of granting a permanent injunction.

### A. Irreparable Injury And Inadequate Legal Remedy

Kolcraft would suffer an irreparable injury that cannot be redressed by any available legal remedies if an injunction is not entered against Chicco. As this district has held:

> The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money. ***Because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole***.

*Black & Decker Inc. v. Robert Bosch Tool Corp.*, No. 04 C 7955, 2006 WL 3446144, at *3 (N.D. Ill. Nov. 29, 2006) (emphasis added) (granting permanent injunction after evaluating *eBay* factors).

Although Chicco alleges that it ceased manufacturing and selling the Accused Lullaby Products in 2016 (*see* Dkt. #423-3; Trial Tr. 523-525, Ex. B), Chicco's purported "cessation of the production and sales of the [Accused Lullaby Products] is not-in and of itself-a sufficient reason to deny a permanent injunction. Instead, there must also be some persuasive evidence that further infringement will not take place." *Black & Decker*, 2006 WL 3446144, at *4 (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281-82 (Fed. Cir. 1988) ("The fact that the

defendant has stopped infringing is generally not a reason for denying an injunction against future infringement unless the evidence is ***very persuasive*** that further infringement will not take place.") (emphasis added)).[1]

In addition, Kolcraft's president, Tom Koltun, testified that Chicco's Accused Lullaby Products are still available for purchase and that Chicco still supports these products in the market:

> [Q.] [T]o your knowledge, are Chicco's accused products still being sold in the marketplace?
>
> A. Yeah, you can find them on some E-commerce sites, yes.
>
> Q. And, to your knowledge, does Chicco still support the accused products in the marketplace?
>
> A. Yeah. Just a couple weeks ago I Googled "Lullaby LX." It took me to their website, and I saw the product. The reviews were still up there. You could download instruction sheets. So, yeah, I would say that they continue to support it.

(Trial Tr. 178, Ex. B.) Worse, despite a jury finding that Chicco *willfully induced and contributed to infringement of the Asserted Claims of '993 Patent* (Verdict Form, Questions 2-3, 8 at 2-3, 8, Dkt. #413), which claims include method claims 28-31, Chicco ***continues*** to aid, assist, and encourage its customers to use the Accused Lullaby Products in a manner that infringes the '993 Patent. Specifically, Chicco still supports the Accused Lullaby Products on its website by promoting the instruction manual of the infringing products and advertising the infringing method.[2] (*See* https://www.chiccousa.com/chicco-product-manuals/product-manuals.html,

---

[1] "The argument in such circumstances is very simple. If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him. . . ." *Id*. at 1282 (quoting *General Electric Co. v. New England Electric Mfg. Co.*, 128 F. 738 740 (2d Cir. 1904)).

[2] Tiffany Manzella, Chicco's customer and end user, testified that she practiced the asserted method claims of the '993 Patent, and that she would not have been able to assemble and disassemble Chicco's Accused Lullaby Product without referring to the owner's manual. (*See* Trial Tr. 361, 367-368, Ex. B.) Similarly, Chicco's prior COO/CEO, Mark Messner, stated that

hyperlink for "Lullaby® LX - SE Playard" Instruction Manual (highlighted for emphasis), Ex. C; https://www.chiccousa.com/on/demandware.static/-/Sites-Chicco-Library/default/dw90 747 01a/manuals/indoor/Lullaby-LX-SE-IS0106.1ES.pdf, Ex. D; http://registration.chiccousa.com/ gear/playards/lullaby-lx/lullaby-lx-cubes.aspx (advertising that the Accused Lullaby Products include a "toy gym for use on the bassinet or as a playmat"), Ex. E.)

A permanent injunction is critical under these circumstances given Chicco's complete disregard of the jury verdict to date. *See Black & Decker*, 2006 WL 3446144, at *4 (granting permanent injunction) (rejecting defendant Bosch's argument that "Black & Decker has failed to establish that it will suffer irreparable harm absent a permanent injunction because Bosch stopped selling the [infringing products] approximately a year ago, no longer makes the infringing products, and has no inventory of the [infringing products]"):

> Black & Decker argues that it would be irreparably harmed even though Bosch has stopped producing and selling the [infringing products] because ***Black & Decker found the [infringing products] for sale at Amazon.com***. This evidence works against the conclusion that further infringement by the old Power Box radios will not take place. *See W.L. Gore & Assoc., Inc.*, 842 F.2d at 1282. Furthermore, ***the Bosch web site still featured the [infringing products] as late as October 11, 2006. As such, Black & Decker has set forth evidence that future infringement by the [infringing products] might take place***.

*Id.* (emphasis added). *See also W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1282 (Fed. Cir. 1988), *abrogated on other grounds as recognized in Zoltek Corp. v. U.S.*, 672 F.3d 1309 (Fed. Cir. 2012):

> The only evidence in this case is that at the time of the trial, [defendant] had stopped making and selling PTFE filament and braided packing material. No reason was given for the cessation. There is nothing to suggest that [defendant] no longer has the capacity to make the filament or braided packing material or that the equipment has been sold or dismantled or that [defendant] has no intention to resume making it.

---

Chicco provides, *inter alia*, instruction manuals that aid and assist end users on how to use the Accused Lullaby Products. (*Id*. at 496.)

> The mere fact that [defendant] was no longer making or selling the infringing filament and packing products is not a sufficient ground for denying an injunction against future infringement. No other reason appears on this record for denying the requested injunction. Accordingly, we conclude that the district court abused its discretion in refusing to enjoin [defendant] from further manufacture and sale of PTFE filament and lattice braid packing material, and we direct the district court, on remand, to enter an appropriate injunction against [defendant].

*Id*.; *Ultratec, Inc. v. Sorenson Commc'ns, Inc*., 2018 WL 4179458, at *4 (W.D. Wis. 2018) (finding that patentee would likely suffer irreparable harm in absence of permanent injunction) (rejecting defendants' contention that "because they have voluntarily ceased using the infringing method, there is no chance of irreparable harm and plaintiffs' request for a permanent injunction is moot" – "[t]he court is not persuaded that future infringement is so unlikely that an injunction is not warranted on that basis").

Still further, at trial, Kolcraft presented evidence that it introduced the commercial embodiment of the '993 Patent, the Travelin' Tot, in December 2002, and that the Travelin' Tot was the first product in the market to offer the unique all-in-one play yard-play gym combination. (*See* Trial Tr. 153-154, 241-242, 291-292, Ex. B.) Mr. Messner conceded that, after seeing the Travelin' Tot at the factory of Kolcraft's manufacturer (Lerado) in 2003, Chicco hired Lerado to manufacture its own infringing play yard-play gym product and launched the Accused Lullaby Products into the marketplace. (*Id*. at 489-490.) Thus, there was a significant time period where Lerado was manufacturing Kolcraft's Travelin' Tot and Chicco's Accused Lullaby Products at the *same time*, and the parties were selling competing products in the U.S. market at the *same time*. (*Id*. at 169; *see also id*. at 158-159 (Mr. Koltun testifying that he saw Chicco's infringing products for sale at a store in 2005, two years before Kolcraft stopped selling the Travelin' Tot).)

Chicco's willfully infringing conduct has caused past harm to Kolcraft. "Past harm to a patentee's market share, revenues, and brand recognition is relevant for determining whether the

patentee '*has suffered* an irreparable injury.'  Although injunctions are tools for prospective relief designed to alleviate future harm, by its terms the first *eBay* factor looks, in part, at what has already occurred."  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861-62 (Fed. Cir. 2010) (emphasis in original) (citations omitted) (affirming district court's finding that defendant's infringement irreparably injured plaintiffs).  Kolcraft is well known in the industry as an innovative company; "Kolcraft prides itself on innovation," has nearly "100 patents issued" in its name, and was "[r]ecently . . . named the second-most innovative company in Chicago by Chicago *Crain's* business."  (Trial Tr. 151, Ex. B.)  Chicco's introduction of a play yard-play gym product that copied Kolcraft's patented commercial product, and support of its Accused Lullaby Products in the marketplace to this day, *supra*, irreparably harmed (and continues to irreparably harm) Kolcraft's good will, brand recognition, and reputation as an innovative company.  *See Black & Decker*, 2006 WL 3446144, at *4:

> Black & Decker asserts that it has suffered irreparable harm to its reputation by the infringing radio chargers.  Indeed, ***the harm to reputation resulting from confusion between products "is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure."*** *Reebok*, 32 F.3d at 1558.  Because Black & Decker has presented evidence that its reputation as an innovator in the jobsite radio market may be harmed by the continued selling and marketing of the [infringing products], this factor weighs in favor of a permanent injunction.

*Id*. (emphasis added).

Kolcraft also introduced evidence at trial that Chicco made "very significant sales" on its Accused Lullaby Products at "very significant profit levels," achieving over $46 million in sales at an incremental profit of 23.4%.  (*See* Dkt. ##423-2, 423-3; Trial Tr. 556, Ex. B.)  Kolcraft may have had the resources to continue selling its Travelin' Tot after the '993 Patent issued if Chicco hadn't saturated the market with its infringing product.  Kolcraft's apparent "[l]oss of market share is a key consideration in determining whether [Kolcraft] has suffered irreparable harm." *Black &*

*Decker*, 2006 WL 3446144, at *4 ("Under such circumstances, a patent owner's right to exclude 'cannot be compensated through monetary damages,' especially 'because it is impossible to determine the portions of the market the patent owner would have secured but for the infringer or how much damage was done to the patent owner's brand recognition or good will due to the infringement.'"). Notably, in order to show irreparable harm, Kolcraft "[is] not required to prove that its specific customers stopped using [its Travelin' Tot] because they switched to [Chicco's Accused Lullaby Products]." *i4i Ltd.*, 598 F.3d at 862.

The fact that Kolcraft is not currently selling a commercial embodiment of the '993 Patent is of no import. Indeed, the Supreme Court in *eBay* rejected the conclusion that a plaintiff's "'lack of commercial activity in practicing the patents' would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue." *eBay*, 547 U.S. at 393. *See also Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (affirming entry of permanent injunction) ("The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent. In view of that right, infringement may cause a patentee irreparable harm not remediable by a reasonable royalty.") (citing 35 U.S.C. § 154(a)(1) (2000)); *BarTex Research, LLC v. FedEx Corp.*, 611 F. Supp. 2d 647, 652 (E.D. Tex. 2009) ("The right to exclude, even for a non-practicing entity, may be the only way to fully vindicate the patentee's ownership in the patent.") Kolcraft, a leading manufacturer of baby products, is the largest producer of crib mattresses in the United States and has the full capacity to re-enter the play yard-play gym market. (Trial Tr. 146-147, 178 Ex. B.)

Further, Kolcraft and Chicco are "head-to-head" competitors (Trial Tr. 556, Ex. B) that have the full capacity to reintroduce an all-in-one play yard-play gym product. Chicco's parent company has over $2 billion a year in revenues (*id*. at 528); Chicco, therefore, has the financial resources to relaunch its infringing product line in the future. And Kolcraft is considering selling

the Travelin' Tot after the resolution of this litigation. (*Id*. at 178.) Denying Kolcraft an injunction may leave it in the untenable position of continuously suing Chicco for past damages in a series of future lawsuits.

Finally, the features claimed in the '993 Patent were important to product sales and drove customer demand for Chicco's Accused Lullaby Products. Indeed, as Chicco's customer and end user, Ms. Manzella, stated:

> Q. Now, why did you register for the Chicco product marked as Plaintiff's Exhibit 7?
>
> A. At the time, we were researching tons of baby products. This particular play yard . . . had a lot of features that we liked. ***We especially liked the bassinet and the play gym that you could use above the play yard, as well as on the floor as a standalone unit***.

(Trial Tr. 360-361 (emphasis added), Ex. B.) Likewise, as Mr. Koltun testified:

> Q. And had you seen anything like [Kolcraft's Travelin' Tot] before on the market, in terms of a play gym with a play yard and then, also, a play gym with a mat that could be used separately?
>
> A. No. We were first. This was the first time this had ever been out in the market. The first time, I think, as you said, that we had a play yard with a play gym, with a play mat and bassinet. ***These were unique features – or the combination of them. And when we started selling, it's the reason that consumers brought it***.

(*Id*. at 154 (emphasis added); *see also id*. at 260-262 (Mr. Myers stating that the "key" features of Kolcraft's Travelin' Tot is "a play gym being used on top of a bassinet" and "the ability to walk away from the play yard and use it as a separate product, as a floor gym"). Accordingly, there is a strong connection between the '993 patented features and the demand for the parties' products embodying those features.

Money damages, therefore, are less adequate to compensate Kolcraft for Chicco's future infringement because the '993 Patent covers the entire play yard-play gym combination. (*See* Trial Tr. 89 (stating in preliminary jury instructions that the '993 Patent "covers a play gym with a mat,

a bassinet, and a play yard"), 154 (Mr. Koltun testifying that the '993 Patent covers "the play gym and the play yard, bassinet, and play mat"), Ex. B; *see also* PTX001 at PTX001-012 (claims 28-31 of the '993 Patent), Ex. F; PTX128 at PTX128-002 – PTX128-003 (reexamined claim 20 of '993 Patent), Ex. G.)  *See Commonwealth Sci. & Indus. Research Organisation v. Buffalo Tech. Inc.*, 492 F. Supp. 2d 600, 606-608 (E.D. Tex. 2007) (granting permanent injunction under "four-factor test recited in *eBay*")

> [Defendants'] infringing use of [plaintiff's] technology is not limited to a minor component of the technology. . . . ***Since [defendants'] infringement relates to the essence of the technology and is not a 'small component' of [defendants'] infringing products, monetary damages are less adequate in compensating [plaintiff] for [defendants'] future infringement***.

*Id*. at 606 (emphasis added).

### B. Balance Of Hardships

The balance of hardships strongly favors Kolcraft.  The substantial and irreparable harm that Kolcraft will continue to suffer without immediate injunctive relief far outweighs any potential harm to Chicco, which willfully infringed the '993 Patent and deliberately copied Kolcraft's patented product.  Indeed, Chicco's witness, Mr. Messner, alleged that (after many years of willfully infringing Kolcraft's '993 Patent) Chicco eventually stopped selling the Accused Lullaby Products and shifted to a non-infringing alternative, the Lullaby Magic Playard, that does not include a play gym:

> Q. *At any time did Artsana stop selling play yards with toy gyms*?
> A. *When the new model came out, they did*.
> ***
> Q. Now, does Defendant's Exhibit 299 [the Chicco Lullaby Magic Playard] include a play gym?
> A. No, it doesn't.
> ***
> Q. *Do you know about when Artsana released the Lullaby Magic Playard*?
> A. *I'm going to say 2014*.  I'm sorry.  It's a while ago.
> Q. [W]hy did Artsana release the Magic Playard?

A. Products get old.  As you move on in time, you have to refresh every category.
And this was a design that we did inhouse to refresh our play yard design.
Q. *[D]id Artsana decide to shift away from toy gyms*?
A. *Yes*.
Q. Artsana decided to move into a mobile product; is that correct?
A. Correct.
Q. *And Artsana did not consider the mobile product to be covered by the '993 patent; is that correct*?
A. *Correct*.
Q. [] *Did Artsana eventually stop selling its Lullaby products with toy gyms*?
A. *Yes, it did*.
Q. *It shifted entirely into mobile products*?
A. *Correct*.
Q. *Do you know if that affected Artsana's sales*?
A. *No.  The new unit did quite well*.
Q. Do you believe that's where the market for play yards was going?
A. Yeah.  Obviously I was involved with this.  I thought it was a very nice design
and looked much more modern than its predecessor.

(Trial Tr. 523-525 (emphasis added), Ex. B.)  Notably, Chicco also currently sells at least *three*

*additional non-infringing Lullaby play yards*, including the Baby, Dream, and Glow models. (*See*

https://www.chiccousa.com/lullaby/, Ex. H.)

The fact that Chicco allegedly no longer sells the Accused Lullaby Products, but rather

non-infringing alternatives, weighs in favor of granting a permanent injunction.  *Black & Decker*,

2006 WL 3446144, at *5:

> [T]his is not a situation where Bosch will be driven out of business. As Bosch
> admits, it stopped making the infringing products over a year ago and presently
> sells [a non-infringing product].  Therefore, the balance of hardship factors tips in
> favor of Black & Decker because the harm cause by future infringement by the
> [infringing products] outweighs any hardship that Bosch may experience.

*Id*. (citations omitted).  Likewise, an injunction would not disrupt Chicco's business or impose any

hardship on Chicco at all, given that its non-infringing product, the Lullaby Magic Playard, did

not affect Chicco's sales and "did quite well" in the market (Trial Tr. 525, Ex. B).  *See Ultratec*,

2018 WL 4179458, at *5 (granting permanent injunction):

> At trial, defendants claimed to have eight non-infringing alternatives, at least one
> of which defendants' expert Dr. Shenoi testified could be ready for the market with

- 10 -

minimal time and money.  Defendants claim to have fully implemented one of them
. . . by December 3, 2015.  ***Defendants do not contend that this alternative is
inferior or impractical in any way.  <u>So an injunction preventing them from using
the method claimed in the [patent-in-suit] would not disrupt their captioned
telephone service or impose any hardship on defendants at all</u>***.

*Id.* (emphasis added).  *See also Douglas Dynamics, LLC v. Buyers Prod. Co*., 717 F.3d 1336, 1345
(Fed. Cir. 2013) (Rader, J.) (reversing district court's denial of permanent injunction and holding
that balance of hardships factor favored patentee) ("[Defendant] represented to the district court
that its new design around was ready for implementation. . . . ***If indeed [defendant] had a non-
infringing alternative which it could easily deliver to the market, then the balance of hardships
would suggest that [defendant] should halt infringement and pursue a lawful course of market
conduct***.") (emphasis added).

Further, the jury's finding of willful infringement tips the equity scale dramatically in favor
of an injunction.  (Verdict Form, Question 8 at 8, Dkt. #413.)  Courts "need not balance the
hardship when a defendant's conduct has been willful." *U.S. v. Marine Shale Processors*, 81 F.3d
1329, 1358 (5th Cir. 1996).  Thus, "[a] willful infringer which seeks to profit by copying from
others' creative ideas should not be heard to complain that its interests will be disturbed by an
injunction." *E.F. Johnson Co. v. Uniden Corp. of Am*., 623 F. Supp. 1485, 1504 (D. Minn. 1985)
(citing *Helene Curtis Industries v. Church & Dwight Co.* 560 F.2d 1325, 1333 (7th Cir. 1977)).

Finally, Chicco is a large company that sells a variety of baby products besides play yards,
including car seats, strollers, highchairs, boosters, bassinets, and the like.  (*See generally*
https://www.chiccousa.com/home.)  An injunction of play yard products Chicco alleges it longer
sells will not cause Chicco significant harm given the vast array of other products Chicco may
continue to sell unabated.

- 11 -

### C.    Public Interest

This factor weighs strongly in favor of granting a permanent injunction.  Indeed,

> [t]he public has an interest in a strong patent system.  In general, ***public policy favors the enforcement of patent rights***.  The public maintains an interest in protecting the rights of patent holders as well as enforcing adequate remedies for patent infringement.  Permanent injunctions serve that interest.  ***In order to enforce a patentee's fundamental property right, courts have consistently allowed injunctive relief to patent owners whose patents have been infringed***.

*Commonwealth*, 492 F. Supp. 2d at 607 (citations omitted) (emphasis added).  "The patent laws promote . . . progress by offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research, and development."  *Abbott Labs. v. Sandoz, Inc*., 544 F.3d 1341, 1363 (Fed. Cir. 2008).

The public interest is particularly strong where, as here, the jury found that Chicco's infringing conduct was willful (Verdict Form, Question 8 at 8, Dkt. #413):

> Here, a jury found that the [accused products] not only infringed the patents-in-suit, but that Bosch's conduct was wilful [*sic*].  Under these circumstances, the public interest will not be disserved by a permanent injunction because it provides Black & Decker with an adequate remedy and allows it to enforce its patent rights.  Thus, this factor supports Black & Decker's motion for a permanent injunction.

*Black & Decker*, 2006 WL 3446144, at *5 (citation omitted).  There is also no countervailing "critical public interest that would be injured by the grant of preliminary relief."  *Hybritech Inc. v. Abbott Labs*., 849 F.2d 1446, 1458 (Fed. Cir. 1988).  Play yards are widely available, and an injunction would implicate no public health or safety issues.  Further, an injunction will not prevent Chicco from selling play yards altogether; it will simply prevent Chicco from selling and promoting products that infringe Chicco's '993 Patent.  Chicco also currently sells multiple non-infringing play yards.  (Section II(B), *supra*.)  *See Acumed*, 551 F.3d at 1331 (no public interest bar to injunction because non-infringing alternatives exist).

## III. CONCLUSION

For the foregoing reasons, Kolcraft respectfully requests, pursuant to Fed. R. Civ. P. 65 and 35 U.S.C. § 283, that a narrowly-tailored permanent injunction be entered, as set forth in the Proposed Order attached as Exhibit A hereto.

Respectfully submitted,

Dated: October 2, 2018

*/s/ Kyle D. Wallenberg*
Raymond P. Niro, Jr.
Kyle D. Wallenberg
NIRO McANDREWS, LLC
200 West Madison Street, Suite 2040
Chicago, IL 60606
(312) 755-8575
Fax: (312) 674-7481
rnirojr@niro-mcandrews.com
kwallenberg@niro-mcandrews.com

*Attorneys for Plaintiff,*
Kolcraft Enterprises, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 2, 2018 the foregoing

## PLAINTIFF'S MOTION FOR ENTRY OF A PERMANENT INJUNCTION

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification to all counsel of record.


*/s/ Kyle D. Wallenberg*
*Attorney for Plaintiff,*
NIRO McANDREWS, LLC